Norman A. JENSEN, Plaintiff,

v.

Jim GARVISON et al., Defendants.

Civ. No. 64–219.

United States District Court

D. Oregon.

Jan. 19, 1965.

**524**

Arthur S. Vosburg, Portland, Or., for plaintiff.

Donald S. Richardson, Portland, Or., for defendants.

KILKENNY, District Judge.

Plaintiff, an Oregon contractor, seeks a declaration of his rights in connection with, and an injunction against defendants on, a certain collective bargaining agreement. Defendants are the trustees of two union welfare trusts, a joint committee of employees and employers and Local No. 10, a labor organization which represents employees in an industry affecting commerce. Jurisdiction is premised on Section 302 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 186, and the Declaratory Judgments Act, 28 U.S.C. § 2201 et seq.

The issues grow out of a collective bargaining agreement between an association of employer members of the Painting and Decorating Contractors of America and local unions of the Brotherhood of Painters, Decorators & Paperhangers of America. The contract in question, dated January 22, 1962, provided, among other things, for the establishment of a Local Joint Committee in each geographical area covered by the contract. Each Local Joint Committee was to be composed of three members representing the employers and three members representing the employees, with expenses of the committee to be borne equally by the employers and the union, with funds to be raised by the payment of an annual fee of a specified amount by such members. The Portland geographic area was the one over which Local 10 had jurisdiction. Also arranged for in the contract was a continuance of a medical-hospitalization trust fund for union members which had initially been established in May, 1953, and the formation of a pension fund for union members. Provision was made for employer contributions in specified amounts to both trusts. In each of the trusts, a declaration of which was subsequently drafted, provision was made for eight trustees, four to be selected by the employers and four to be named by the union. Each declaration contained a provision that the union could be treated as an employer with respect to certain of the union's employees for the purpose of making a contribution to the two trust funds for the benefit of those particular employees. Nothing was mentioned in the collective bargaining agreement, nor in the medical-hospitalization trust, of payments to retired employees and their wives. Such medical benefit payments have been made to such retired employees and their wives since January 15, 1958, on the same basis as active employees. On that date, a resolution was adopted authorizing the payment of such benefits.

(1) Plaintiff challenges the validity of the contract on the ground that the Local Joint Committee is a representative of employees; and since the contract requires employers to make annual payments to such Committee, the contract in reality permits payments to "representatives" of employees in direct violation of Section 302(a) of the LMRA. Section 302(a) prohibits an employer from paying anything of value to a representative of his employees. Section 302(b) prohibits the representative of employees from receiving anything of value from an employer. Exceptions are made in Section 302(c) in certain particulars including a payment "with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer * * *."

To fall within the exception the payments made to the trust fund must be specified in a written agreement between the employer and the union. A violation of any one, or more, of the above provisions constitutes a crime.

■ The provisions of the contract requiring payments from the employers to the Local Joint Committee are, in my opinion, in direct violation of the provisions of the LMRA. Such payments do not fall within the mentioned statutory exceptions. This view is supported by Local No. 2 of Operative Plasterers, etc. v. Paramount Plastering, Inc., 310 F.2d 179 (9th Cir. 1962), cert. denied, 372 U.S. 944, 83 S.Ct. 935, 9 L.Ed.2d 969 (1963), and Sheet Metal Contractors Ass'n, etc. v. Sheet Metal Workers Int'l. Ass'n, 248 F.2d 307 (9th Cir. 1957), cert. denied, 355 U.S. 924, 78 S.Ct. 367, 2 L.Ed.2d 354 (1958).

■ Although plaintiff thinks otherwise, I am convinced that the illegal provision above mentioned, does not destroy the entire contract, nor the trusts established in connection therewith. The savings clause in the contract [1] prevents such a result. National Labor Relations Board v. Rockaway News Supply Co., 345 U.S. 71, 73 S.Ct. 519, 97 L.Ed. 832 (1953).

(2) Aside from his argument that the illegal provision above mentioned vitiates the entire contract, the plaintiff urges that it would be illegal for him to contribute to either the medical-hospital trust or the pension trust. One of the permissible exceptions to contribution by an employer to such a trust is stated in Section 302(c) (5), which permits an employer payment "with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents * * * *Provided*, That * * * (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer * * *."

■ It is plaintiff's position that under the factual background of this case, the provisions of the medical-hospital trust and the pension trust requiring employer contributions, do not fall within the exception. Already, I have concluded, in substance, that both trusts should be considered to be "representatives" of employees, since one-half of the trustees of each trust are union members. This reasoning is supported by Local No. 2 of Operative Plasterers, etc. v. Paramount Plastering, Inc., supra. In determining whether the employer payments fall within the exception, above mentioned, we must keep in mind that these trusts permit the union to make contributions to each trust fund for the benefit of certain of the union's *own employees*. Of more than passing significance is the fact that the union employees who would be the beneficiaries under the pension trust are also the business representatives of the unions and serve as trustees of the trust funds. Precisely the same situation, with the exception of certain stenographic employees, exists with reference to the medical-hospital trust.

■ That Congress, when enacting this legislation, used the terms "employer" and "employee" in the sense of an industrial employer or an employer with whom the union might bargain in interstate commerce, and not the union in its capacity as an employer of its own personnel, is demonstrated beyond cavil, by the fact that it was dealing with customary labor disputes, and was attempting to promote industrial peace. The Congress was not concerned, in this legislation, with the well being of employees looking to the union for their compensation. Consequently, payments made under the terms of these trusts would not be for the *exclusive* benefit of the employees of such employer," but, on the other hand, would benefit, at least to some

[1]. "If any provision of this Agreement is declared invalid, or applicability thereof to any person, circumstance, or thing is held invalid, the validity of the remainder of this Agreement and/or applicability to any person, circumstance or thing, shall not be affected thereby."

extent, the employees of the union. We are taught by Arroyo v. United States, 359 U.S. 419, 79 S.Ct. 864, 3 L.Ed.2d 915 (1959) and United States v. Ryan, 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335 (1956), that the Congress, when using this type of language, intended an exact compliance and that the language so used was not carelessly or inadvertently selected. This is made abundantly clear by the preciseness with which the exceptions are outlined and defined. Additionally, exceptions in statutes must be strictly construed and limited to the objects fairly within their terms, since they are intended to restrain or except that which would otherwise be within the scope of the general language. Rheem Manufacturing Co. v. Rheem, 295 F.2d 473 (9th Cir. 1961); Korherr v. Bumb, 262 F.2d 157 (9th Cir. 1958).

Aside from my own conclusion, at least two other District Courts have arrived at the same result on the same issue. Kroger Co. v. Blassie, 225 F.Supp. 300 (E.D.Mo.1964) and Local No. 688, International Brotherhood of Teamsters v. Townsend, 229 F.Supp. 417 (E.D.Mo. 1964). Defendants' argument that the union members will not assume roles of leadership in the union unless they are entitled to welfare benefits, is an attempt to substitute what might be a valid political theory for what would appear to be the express intent of the Congress. The argument avoids the issue.

■ (3) Finally, plaintiff attacks the legality of the medical benefits now being paid under the medical-hospital trust to former employees, now retired, and to their wives. On this issue, I have a question of fact to decide. I find from all of the evidence that the benefits presently paid to the retirees and their wives are provided for by extra assessments now being paid by the employers and not out of surplus contributions which accumulated during the time the former employees were actively employed. Such being my finding, I am compelled to conclude that the payments made by the employers to this trust fund are not "for the sole and exclusive benefit of the employees of such employer, and their families and dependents * * *" for the reason that said persons are no longer employees. Such payments are illegal acts. This logic finds full support in the legislation itself and in Kroger Co. v. Blassie, supra, and Local No. 688, International Brotherhood of Teamsters v. Townsend, supra. It is unnecessary for me to go as far as these cases and express an opinion on whether a welfare trust, such as here in question, jointly administered by employers and unions, may ever pay benefits, under any state of facts, to retired employees or their families. That question is left for future decision in this district.

The agreed facts in the pre-trial order and this opinion shall serve as my findings and conclusions. If desired, additional findings may be requested. Counsel for plaintiff shall draft an appropriate judgment.