Argued and submitted March 20, affirmed July 13,
reconsideration denied August 27,
petition for review denied October 27, 1981 (291 Or 893)

### MORRISON,
*Respondent,*

*v.*

### SCHOOL DISTRICT NO. 48,
### WASHINGTON COUNTY,
*Appellant.*

(39-926; CA 17922)

631 P2d 784

Clifford N. Carlsen, Jr., Portland, argued the cause for appellant. With him on the briefs were James N. Westwood, and Miller, Nash, Yerke, Wiener & Hager, Portland.

Robert D. Durham, Eugene, argued the cause for respondent. With him on the brief were Liana Colombo, Jennifer Friesen, and Kulongoski, Heid, Durham & Drummonds, Eugene.

Eldon F. Caley, and Neuner, Dole, Caley & Kolberg, Roseburg, filed a brief amicus curiae for Douglas County School District No. 4.

Bruce Bischof, Sunriver, filed a brief amicus curiae for North Clackamas School District No. 12.

Edward C. Harms, Jr., and Harms, Harold & Leahy, Springfield, filed a brief amicus curiae for Oregon School Boards Association.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Defendant School District appeals from a judgment ordering it to disclose to plaintiff its substitute teacher roster under the statutes providing for inspection of public records. ORS 192.410 *et seq.* Defendant assigns as error the trial court's finding that the requested information did not fall within either of two claimed statutory exemptions relating to disclosure of public records: information "of a personal nature," ORS 192.500(2)(b), and information "submitted to a public body in confidence." ORS 192.500(2)(c). We affirm.

During the spring of 1979, the Beaverton Education Association (BEA), the bargaining unit for full-time teachers in the Beaverton School District, was negotiating with defendant for a new contract to succeed the one that would expire on June 30, 1979. Plaintiff was president of BEA and a member of its board of directors during this period; his term as president expired June 1, 1979. Sometime in the spring, another BEA representative made an oral request of defendant for a copy of a roster of the names of the substitute teachers in the district. The record does not show in what form the roster is kept by defendant or what other information is included on the roster. The substitute teachers, *i.e.,* those teachers who are on occasion called upon to serve as teachers in the place of regular teachers who request sick leave or are otherwise unable to serve in their usual capacity for brief periods, are in another bargaining unit represented by the Beaverton Substitute Teachers Association (BSTA). The substitute teachers are not employees of defendant except on an occasional basis when they are called upon to substitute.

In response to the oral request, a representative of defendant consulted with BSTA's president, who took the position that the names should not be disclosed for fear of intimidation of the substitute teachers in the event of a strike. In late May, defendant sent out a questionnaire to all substitute teachers, on which the substitute teachers were asked to indicate whether or not they wished to have their names disclosed. Out of 200 questionnaires sent, 169 were returned, and 75 percent of those who responded indicated they did not wish to have their names revealed.

In May, 1979, plaintiff, as president of BEA, authorized several communications to teachers, school board members and members of the community which suggested that contract negotiations were stalled, prospects for settlement remote and that a strike might occur in the fall of 1979. The parties had reached an impasse and were involved in the mediation phase of collective bargaining. On June 6, 1979, the BEA bargaining unit voted to authorize its bargaining representatives to send a notice of intention to strike if negotiations were not settled by August 15, 1979. At some point after the vote, BEA requested factfinding.

On June 11, 1979, plaintiff, acting in his capacity as past president and board member of BEA, delivered to defendant a written request for a copy of the substitute teacher roster. The request was denied. Pursuant to plaintiff's petition, the Washington County District Attorney ordered disclosure of the roster on June 19, 1979. Defendant did not comply with the order, and this litigation was initiated on July 27, 1979. On August 22, 1979, the contract dispute was settled; no strike occurred.

At trial, defendant relied solely on the two exemptions relating to information "of a personal nature" and information "submitted in confidence." Defendant did not argue that the requested information was not a public record,[1] or that plaintiff lacked standing to make the request. Therefore we turn to consideration of the two claimed exemptions.

■ ORS 192.500(2)(b) provides:

"The following public records are exempt from disclosure under ORS 192.410 to 192.500:

" * * * * *

"Information of a personal nature such as that kept in a personal, medical or similar file, if the public disclosure

---

[1] ORS 192.410 provides in relevant part:

"(4) 'Public record' includes any writing containing information relating to the conduct of the public's business, prepared, owned, used or retained by a public body regardless of physical form or characteristics.

"(5) 'Writing' means handwriting, typewriting, printing, photostating, photographing and every means of recording, including letters, words, pictures, sounds, or symbols, or combination thereof, and all papers, maps, magnetic or paper tapes, photographic films and prints, magnetic or punched cards, discs, drums, or other documents."

thereof would constitute an unreasonable invasion of privacy, unless the public interest by clear and convincing evidence requires disclosure in the particular instance. The party seeking disclosure shall have the burden of showing that public disclosure would not constitute an unreasonable invasion of privacy;"

Although the ultimate burden of proof may lie on the person making the request under this exemption, *see Turner v. Reed,* 22 Or App 177, 182 n 5, 538 P2d 373 (1975), defendant has the general burden of sustaining its action in denying disclosure. ORS 192.490(1).[2] Defendant must establish that the requested information falls within the claimed exemption. The initial inquiry, then, is what the exemption spelled out in subsection (b) means. Once that has been determined, the inquiry is whether it applies here.

▆▆ In construing the exemption characterized by that phrase, we are guided by the general rule of statutory construction that exceptions to statutory requirements are to be narrowly construed. *See Jensen v. Garvison,* 241 F Supp 523, 526 (DC Or 1965), *cause remanded,* 355 F2d 487 (9th Cir 1966). The legislative history of the statutory scheme involved here indicates that the bill was drafted with that general rule in mind: government records are public information, and exceptions should be narrowly and specifically defined. *See* testimony of Lee Johnson, Attorney General, Minutes, Joint Special Committee on Professional Responsibility, p 2 (February 26, 1973); Tape 2, Side 1, 400-430, HB 2157 (February 26, 1973). Defendant, however, argues that the exemptions here should be broadly construed, because *in this case* the policies of the 1973 enactment relating to collective bargaining in the public employment sphere, ORS 243.650 *et seq.,* would be better served by such a reading. We are not, however, persuaded

---

[2] *ORS 192.490(1) provides:*

"In any suit filed under ORS 192.450, 192.460, 192.470 or 192.480, the court has jurisdiction to enjoin the public body from withholding records improperly withheld from the person seeking disclosure. The court shall determine the matter de novo *and the burden is on the public body to sustain its action.* The court, on its own motion, may view the documents in controversy in camera before reaching a decision. Any noncompliance with the order of the court may be punished as contempt of court." (Emphasis supplied.)

that the construction of this statutory provision for exemption from disclosure of public records should depend upon who requests the information or the circumstances existing at the time of the request.

■    The phrase, "such as that kept in a personal, medical or similar file" appears to be illustrative, rather than limiting, because of the use of the words "such as" and "similar." The phrase apparently is intended to be descriptive, but it is not especially enlightening. What, for example, is a "personal" file?[3] Medical information is otherwise exempt under ORS 192.496(1); *see also,* ORS 192.525; 192.530. This suggests that the exemption in question is intended to cover some different aspect of medical information. In addition, we do not view the exemption as turning on the existence of a "file." In *Wine Hobby USA, Inc., v. United States Internal Rev. Serv.,* 502 F2d 133, 135 (3d Cir 1974), the court held that a list of names and addresses is a "file" within the meaning of the federal exemption from disclosure of information of a personal nature contained in "personnel and medical and similar files," 5 USC § 552(b)(6), since the common denominator in those categories was thought to be the personal quality of information, the disclosure of which might constitute a clearly unwarranted invasion of personal privacy.

■ ■    We do not believe that whether information is of a personal nature depends upon an inquiry into the unreasonableness of the invasion of privacy that would be occasioned by public disclosure. At first glance, that might appear to be the case, because of the clause, "if the public disclosure thereof would constitute an unreasonable invasion of privacy." In *Wine Hobby,* the Third Circuit understood the federal exemption to be defined by the degree of

---

[3] This clause originally referred to "personnel, medical or similar file," in keeping with the federal exemption on which the Oregon statute was initially based, 5 USC § 552(b)(6), which provides an exemption from disclosure for "personnel and medical and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." In written amendments presented by the Attorney General at a hearing on May 14, 1973, before the House members of the Joint Subcommittee on Professional Responsibility on this bill, HB 2157, the word "personnel" appeared without explanation and for the first time as "personal." This change was incorporated into the version which became law. *See* Exhibits, Joint Subcommittee on Professional Responsibility, pertaining to HB 2157 (1973); original bill file, HB 2157 (1973).

invasion of privacy. 502 F2d at 135-136. But in the Oregon statute, unlike the federal, the last sentence of ORS 192.500(2)(b) expressly shifts the burden of proof to the party seeking disclosure to show that public disclosure would not constitute an unreasonable invasion of privacy. That shifting of the burden argues strongly against construing the exemption to mean that if the public disclosure of the information would constitute an unreasonable invasion of privacy it is personal in nature. The clause, "if the public disclosure thereof would constitute an unreasonable invasion of privacy" establishes a second element of the exemption, but does not describe the category itself: "information of a personal nature." That is, the exemption under ORS 192.500(2)(b) is applicable if (1) the information requested is within the category, the burden of proof being upon the public body and (2) public disclosure would constitute an unreasonable invasion of privacy, the burden of *disproof* being on the person requesting the information, unless (3) the public interest is shown by clear and convincing evidence to require disclosure.

■     We turn now to consideration of the meaning of the phrase "information of a personal nature." That language is not explained elsewhere in the enactment. Little light is shed by a cursory reference in the legislative history to personnel records and information relating to welfare recipients. Testimony of Lee Johnson, *supra,* Tape 9, side 1 at 430. We do find some insight into the concept of personal information in our prior judicial interpretation of this enactment. *Turner v. Reed, supra,* was the first appellate decision interpreting the 1973 legislation governing inspection of public records. In *Turner,* plaintiff sought all prison and parole records relating to himself within a 15-year period. Because defendant in that case relied only on ORS 192.500(2)(a) and (2)(d) to sustain its refusal to disclose a number of documents, we were concerned with exemptions other than those claimed here. Some of the documents withheld, however, contained plaintiff's wife's personal comments about their marriage and family life. We said:

> "In planning and implementing a program of rehabilitation for a person in prison or on parole, the Corrections Division has a legitimate and substantial interest in learning about the person's family life. *Information might find*

*its way into Corrections Division records that normally would not be shared with strangers. The public interest in disclosure of such personal information is nonexistent or de minimis.* The public interest in confidentiality is overwhelming. Therefore, although we think defendants could have more properly relied upon other statutory exemptions, *see,* n 12, supra, [*e.g.,* ORS 192.500(2)(b) and (2)(c)] we hold that disclosure of personal information about a person's family life would 'substantially prejudice' the proper discharge of the functions of the Corrections Division, and that 'the public interest in confidentiality clearly outweighs the public interest in disclosure.' ORS 192.500(2)(d).

*We do not mean to exempt all references to a person's family life. Factual information, for example that a person is married or a parent, is subject to disclosure. Although the line may be difficult to draw, we only intend to exempt information that is normally regarded as personal in nature.*" (Emphasis supplied.) 22 Or App at 192.

Although our comments in *Turner* were made in the context of the balancing of the public interest in confidentiality against the public interest in disclosure, the definition of personal information there suggested, *i.e.,* that which "normally would not be shared with strangers," is appropriate here.

■  The information requested here is a list of the names of substitute teachers in the school district. Defendant argues that what the list conveys is in fact personal, *i.e.,* the identity of the substitute teachers as a group, which becomes particularly important in the context of the request by this plaintiff. We do not think that one's name or identity as a substitute teacher is normally not shared with strangers. Certainly any parent would be entitled to find out the names of substitute teachers, and there could be no reasonable contention that the information would be personal in that context. We therefore hold that in and of itself, the information requested does not fall within the relatively narrow category of *personal* information.

■ ■  Defendant points out that the phrase "in the particular instance" occurs in ORS 192.500(2)(b), which, it is contended, suggests that the context in which the request is made is relevant to whether the information is personal in

nature. We do not read that phrase in that manner. Rather, we view it as acquiring significance only if the information fits initially into the category, and if the invasion of privacy is *not* shown *not* to be unreasonable, but the public interest clearly requires disclosure "in the particular instance." Furthermore, the party seeking the information must show that "public disclosure" would not constitute an unreasonable invasion of privacy; the term "public" indicates that the focus is on the effect of disclosure in general, not disclosure to a particular person at a particular time.

■■ We conclude that information not otherwise personal, but which may become personal by reason of the context of the particular request, does not fall within the exemption. To construe the exemption to include such information would be to rewrite the statute, which we may not properly do. We have said that the reason for a party's request to inspect public records is irrelevant. *Turner v. Reed, supra,* 22 Or App at 180 n 2; *see also, MacEwan v. Holm et al,* 226 Or 27, 39, 359 P2d 413 (1961); *Papadopoulos v. St. Bd. of Higher Ed.,* 8 Or App 445, 448 n 1, 494 P2d 260 (1972). If the exemption is to be broadened in the respect defendant contends it should be, it is for the legislature to accomplish, not the courts.

Defendant here has not passed the first hurdle of placing the requested information within the category of information "of a personal nature" as we have interpreted it. The trial court did not err in finding this exemption inapplicable.

■■ The exemption for information "submitted in confidence" is found in ORS 192.500(2)(c):

"Information submitted to a public body in confidence and not otherwise required by law to be submitted, where such information should reasonably be considered confidential, the public body has obliged itself in good faith not to disclose the information, and when the public interest would suffer by the disclosure."

In order to avail itself of this exemption, defendant must establish that the information was submitted in confidence at the outset. There is no evidence that, prior to the survey, the substitute teachers had submitted their names in confidence. Defendant has not even shown how the information

was submitted. Although not itself placed in evidence, the survey as described in testimony merely posed the question to the substitute teachers whether they wished their names to be disclosed. The results of that inquiry may well have been informative to defendant, but that does not mean the requirements of the provision have been met. Defendant argues that the names were effectively resubmitted by the questionnaire respondents; theoretically they could have been, but there is no evidence here that the names had ever been *withdrawn.* We conclude that the trial court did not err in finding that the information was not submitted to the public body in confidence within the meaning of ORS 191.500(2)(c).[4]

*Amicus* Douglas County School District No. 4 contends that the request here is governed not by the statutes relating to inspection of public documents, but by those governing collective bargaining in the public employment sphere, ORS 243.650 *et seq. Amicus* argues that as between the parties engaged in collective bargaining, access to information is a one-way street, because union organizations are not public bodies subject to disclosure, resulting in disequilibrium between employer and employee in the collective bargaining context, contrary to the policy expressed in ORS 243.656(3).[5] *Amicus,* accordingly, would place the requested information beyond the reach of the law relating to inspection of public records by characterizing the information *as requested by BEA's representative* as not being fairly related "to the conduct of the public's business." Hence, asserts the *amicus,* the roster is not a public record. ORS 192.410(4), *supra,* n 1.

---

[4] We do not mean to suggest that the same information, if properly submitted, would necessarily come within the ambit of this exemption. We do not, for example, reach the question whether the roster, as such, may reasonably be considered to be confidential, another requirement of this exemption.

[5] ORS 243.656(3) provides:

"(3) Experience in private and public employment has also proved that protection by law of the right of employes to organize and negotiate collectively safeguards employes and the public from injury, impairment and interruptions of necessary services, and removes certain recognized sources of strife and unrest, by encouraging practices fundamental to the peaceful adjustment of disputes arising out of differences as to wages, hours, terms and other working conditions, and by establishing greater equality of bargaining power between public employers and public employes."

■ ■ Quite apart from the implicit concession made by defendant at trial and in this court that the requested information *is* a public record, we do not accept the underlying proposition in *amicus'* argument that a nonpublic purpose for a request made under the provisions for inspection of public records transforms a public record into something else. The roster of names of substitute teachers, prepared by the school district, clearly relates to the conduct of the public's business in allowing temporary replacements to be found for regular teachers who are absent, whatever the cause.

■ We perceive no basis for construing the 1973 enactments relating to inspection of public records and to collective bargaining for public employees *in pari materia* in order to prevent disclosure here. ORS 192.420 plainly states:

"Every person has a right to inspect any public record of a public body in this state, except as otherwise expressly provided by ORS 192.500."

The 1973 legislature was aware of the interrelationship of collective bargaining for public employees and inspection of public records when it enacted legislation in both spheres. It specifically exempted from inspection two categories of information pertaining to labor relations: ORS 192.500(1)(g) (names of employees signing requests for representation or decertification) and ORS 192.500(1)(i) (investigatory information relating to complaints about unfair labor practices). Furthermore, were we to attempt to engraft another exception for collective bargaining onto the law governing inspection of public records, we would face such questions as for what phases of collective bargaining this exception would apply, and whether requests made by private citizens would also fall within the exception. Resolution of those questions is for the legislature.

Affirmed.