Argued and submitted January 13, affirmed May 9, petitioner's reconsideration denied June 15, respondent's reconsideration denied June 29, petition for attorney fees denied July 27, all petitions for review allowed August 28, 1984 (297 Or 781) See 299 Or 98, 699 P2d 189 (1985)

OGDEN, dba Lucille's Hair Care,
*Petitioner,*

*v.*

BUREAU OF LABOR,
*Respondent.*

(No. 26-81, CA A27956 (Control))

STATE ex rel ROBERTS,
*Respondent,*

*v.*

OGDEN, dba Lucille's Hair Care,
*Appellant.*

(No. A8305 02813, CA A29998)
(Cases Consolidated)

682 P2d 802

236

Charles C. Erwin, Portland, argued the cause and filed the briefs for petitioner.

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

Rossman, J., dissenting.

WARREN, J.

This is an employment discrimination case in which the Commissioner of Labor found that petitioner, an employer, had discriminated against the complainant, Miller, by refusing to hire her because of her age, in violation of ORS 659.030(1)(a). The commissioner's order directed petitioner to cease and desist from discriminating against any prospective employe on the basis of age and to pay Miller $12,143.65 in damages for lost wages and $4,766.76 in prejudgment interest, totalling $16,910.41. In this petition for judicial review, petitioner seeks reversal of the entire order. We affirm but modify the damage award.[1]

Miller filed a complaint with the Bureau of Labor on May 7, 1979, alleging that petitioner had discriminated against her on the basis of age. The commissioner held a hearing on July 15, 1982, after which she issued the final order challenged in this appeal by petitioner. The order was supported in part by the following ultimate findings of fact:

"1. On February 13, 1979, an advertisement placed by Respondent in a Portland, Oregon newspaper sought a 'full or part time' beautician with 'experience,' 'for a retirement home' beauty salon which Respondent owned and operated. Actually, Respondent was seeking two full-time beauticians who would work on Saturdays.

"2. On February 13, 1979, Complainant was thirty years old and a licensed beautician who had experience working with elderly persons both as a beautician and in other types of employment. She was also unemployed.

"3. Complainant was qualified for the positions for which respondent sought applicants in her February 13, 1979, advertisement.

"4. On or about February 13, 1979, Complainant saw Respondent's advertisement. Because she was looking for work as a beautician and preferred to work with elderly clients, Complainant answered Respondent's advertisement immediately. Complainant talked with Respondent twice about Respondent's openings, first by telephone and later in

---

[1] On appeal to the circuit court from the order of the Bureau of Labor, the circuit court adopted the decision of the Bureau. No separate assignments of error are raised from the decision of the circuit court. Our decision on the assignments of error from the Bureau of Labor disposes of all issues raised.

person. Respondent's first query of Complainant was what was Complainant's age. In response to Complainant's answer, Respondent voiced her concern that Complainant was, in effect, too young to work with the elderly people who composed almost all of the clientele at Respondent's salon. Respondent labelled Complainant in terms of her age and had such strong misgivings about Complainant's age that she did not express interest in Complainant's experience or qualifications during her two encounters with Complainant.

"5. At the time Complainant answered Respondent's advertisement, the youngest of Respondent's four beauticians was 46 years old.

"6. Complainant and Irene Bynum were the only two applicants for Respondent's openings who remained interested in them after being interviewed by Respondent. Ms. Bynum was 49 years old at the time. In evaluating the qualifications of Complainant and Ms. Bynum, Respondent considered three factors, one of which was the age of each of them. Respondent hired Ms. Bynum. Respondent did not hire or consider hiring Complainant.

"7. Respondent maintains that the only reason she did not hire Complainant was Complainant's alleged refusal to work for her full-time or on Saturdays. In fact, Complainant wanted full-time work and expected (and was willing) to work on Saturdays. Ms. Bynum, on the other hand, was available to work only two days per week, Tuesday and Saturday.

"8. Respondent did not hire or consider hiring Complainant for employment because of Complainant's age.

"* * * * *"

The record shows that these factual findings are supported by substantial evidence, and therefore we are bound by them. ORS 183.482(8)(c).

Petitioner raises five assignments of error: (1) The commissioner erred in holding that ORS 659.030(1)(a) applies to a non-Oregon resident. (2) The commissioner erred in finding that the employer declined to hire claimant on the basis of her age. (3) The commissioner erred in holding that she had the authority to award money damages. (4) The commissioner erred in awarding prehearing interest. (5) The commissioner erred in not disclosing the investigative file. We address each assignment in order.

■ First, petitioner claims that the commissioner erred in applying the protections against unlawful employment practices contained in ORS 659.030(1)(a) to a Washington resident. She argues that ORS 659.022,[2] expressing a public policy to protect "inhabitants of this state" from certain arbitrary barriers to employment, restricts these protections to Oregon residents. We do not agree. The full text of the policy statement ensures those protections to "all people within the state," and unlawful employment practices are defined as certain acts of discrimination against "an individual." ORS 659.030(1)(a). Although Miller was a Washington resident, the discrimination took place in Oregon. Under these circumstances, we hold that the commissioner did not err in accepting jurisdiction over a charge of employment discrimination alleged to have been committed within the boundaries of this state.[3]

■ In her second assignment, petitioner argues that the commissioner's finding that petitioner refused to hire Miller because of her age does not constitute an unlawful employment practice in violation of ORS 659.030(1)(a). Petitioner initially contends that the relevant statute was intended to protect an employe possessed of age, not of youth. The plain message of the statute is otherwise. ORS 659.030(1)(a) defines an unlawful employment practice:

"For the purposes of ORS 659.010 to 659.110, 659.227, 659.330, 659.340 and 659.400 to 659.435, it is an unlawful employment practice:

"(a) For an employer, because of an individual's race, religion, color, sex, national origin, marital status or age if the

---

[2] ORS 659.022 provides, in pertinent part:

"The purpose of ORS 659.010 to 659.110 and 659.400 to 659.435 is to encourage the fullest utilization of available manpower by removing arbitrary standards of race, religion, color, sex, marital status, national origin or age as a barrier to employment of the inhabitants of this state; to insure human dignity of all people within this state, and protect their health, safety and morals from the consequences of intergroup hostility, tensions and practices of discrimination of any kind based on race, religion, color, sex, marital status or national origin. * * *"

[3] Petitioner's position may conflict with Article IV, section 2, of the United States Constitution. *See United Bldg. & Constr. Trades v. Mayor,* ___ US ___, 104 S Ct 1020, 79 L Ed 2d 249 (1984); *Hicklin v. Orbeck,* 437 US 518, 98 S Ct 2482, 57 L Ed 2d 397 (1978); *Baldwin v. Montana Fish and Game Comm'n,* 436 US 371, 98 S Ct 1852, 56 L Ed 2d 354 (1978); Although the issue is not raised by the parties, we construe statutes to be consistent with constitutional principles whenever possible.

individual is *18 years of age or older and under 70 years of age,* or because of the race, religion, color, sex, national origin, marital status or age of any other person with whom the individual associates, or because of a juvenile record, that has been expunged pursuant to ORS 419.800 to 419.839, of any individual, to refuse to hire or employ or to bar or discharge from employment such individual. However, discrimination is not an unlawful employment practice if such discrimination results from a bona fide occupational requirement reasonably necessary to the normal operation of the employer's business."

Miller is over the age of 18 and under the age of 70 and is entitled to rely on this statute.

Petitioner further argues, and the dissent agrees, that the commissioner must find that age was the *sole* factor in the decision not to hire Miller in order to constitute an unlawful employment practice under ORS 659.030(1)(a). To support this position, petitioner relies solely on the policy stated in ORS 659.015:

"It is declared to be the public policy of Oregon that available manpower should be utilized to the fullest extent possible. To this end the abilities of an individual, and not any arbitrary standards which discriminate against an individual solely because of his age, should be the measure of the individual's fitness and qualification for employment."

The dissent concludes that the word "solely" used in the statute demonstrates a legislative purpose to allow consideration of age as a hiring criterion, if at least one other factor can be identified in the decision not to hire. We are not persuaded.

The policy statement contained in ORS 659.015 is a part of the age discrimination legislation enacted in 1959 as a "positive approach" to the very real problem of discrimination in employment because of age.[4] Companion bills, SB 16 and

---

[4] In a hearing before the Senate State and Federal Affairs Committee on February 4, 1959, one of the sponsors and the major advocate of SB 16 and SB 17, Senator Alf Corbett, testified that the bills were directed at a very real and growing problem in Oregon and the United States as a whole. He stated that the number of people over 65 had been growing rapidly and that study had shown conclusively that discrimination because of age existed in employment. He said that he felt it very important for the state to adopt a positive approach to this problem through SB 16 and SB 17.

SB 17, prohibited public and private employers from discriminating against an individual in employment decisions "because of age."

Senate Bill 17, which became former ORS 659.024 (*repealed by* Or Laws 1977, ch 770, § 1), provided, in pertinent part:

> "(1) It is an unlawful employment practice for an employer to refuse to hire or employ or to bar, discharge, dismiss, reduce, suspend or demote any individual because of his age if the individual is 25 years of age or older and under 65 years of age; * * *."

Senate Bill 16, which became former ORS 659.026 (*repealed by* Or Laws 1977, ch 970, § 1) provided, in pertinent part:

> "(1) It is an unlawful employment practice for a public employer or any person acting for a public employer to disqualify or discriminate against any individual in any civil service entrance, appointment or promotion examination or rating, or to refuse to hire, employ or reemploy or to bar, discharge, dismiss, reduce, suspend or demote any individual because of his age if the individual is 25 years of age or older and under 65 years of age; * * *."

The policy statement in ORS 659.015 containing the word "solely" applied to the language in former ORS 659.024 and 659.026 proscribing discrimination "because of age." This is the current language of ORS 659.030(1)(a), as well as the language in the federal age discrimination in employment law, passed in 1967,[5] which provides:

---

[5] The federal age discrimination law enacted in 1967 included the following statement of purpose:

"(a) The Congress hereby finds and declares that—

"(1) in the face of rising productivity and affluence, older workers find themselves disadvantaged in their efforts to retain employment, and especially to regain employment when displaced from jobs;

"(2) the setting of arbitrary age limits regardless of potential for job performance has become a common practice, and certain otherwise desirable practices may work to the disadvantage of older persons;

"(3) the incidence of unemployment, especially long-term unemployment with resultant deterioration of skill, morale, and employer acceptability is, relative to the younger ages, high among older workers; their numbers are great and growing; and their employment problems grave;

"It shall be unlawful for an employer—

"(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, *because of such individual's age.*" (Emphasis supplied.)

Under these circumstances, we find the application of 29 USC § 623(a)(1) by the federal judiciary instructive in the construction of our state counterpart. In *Kelly v. American Standard, Inc.,* 640 F2d 974 (9th Cir 1981), the court, interpreting the Age Discrimination in Employment Act, 29 USC §§ 621-634 (1976 & Supp II 1978), adopted the "determining factor" test established in *Laugesen v. Anaconda Company,* 510 F2d 307, 317 (6th Cir 1975), and restated as a "but for" test in *Loeb v. Textron,* 600 F2d 1003, 1019 (1st Cir 1979). Rejecting the argument that a plaintiff must prove age was the sole factor in his discharge, the court upheld a jury instruction which stated that the plaintiff has the burden of proving that one of the reasons he was terminated was because of his age and that he should prevail if this factor "made a difference" in determining whether the plaintiff was retained or discharged.

■■■ At first glance, the language in ORS 659.015 may seem to support the dissent's position, but when one considers the context in which the word "solely" is used and the context in which the policy statement appears, it is apparent that the dissent cannot be correct. The statute proscribes the use of "*any* arbitrary standards which discriminate against an individual solely because of his age." (Emphasis supplied.) "Solely because of his age" refers to any employment criterion which makes age a consideration in an employment decision without relating age to ability to perform the job. The evidence in this case supports the conclusion that Miller was not hired because petitioner thought she was "too young," even though qualified for the job. "Too young" is an arbitrary standard which

"(4) the existence in industries affecting commerce, of arbitrary discrimination in employment because of age, burdens commerce and the free flow of goods in commerce.

"(b) It is therefore the purpose of this chapter to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment."

discriminates against Miller solely because of her age. The statute forbids the use of *any* such standard. The commissioner's finding that petitioner relied on three factors, one of which was age, the other two of which are not identified, cannot justify the use of age as a factor in a hiring decision in the face of a clear statutory policy against hiring decisions being made "because of age."

We also must consider ORS 659.015 within the statutory scheme as it existed when Miller claims to have been injured. In 1977, ORS 659.024 and 659.026 were repealed and ORS 659.030(1)(a) was amended to prohibit employers from refusing to hire an individual "* * * because of race, religion, color, sex, national origin, marital status or age * * *." Because race, religion, color, sex, national origin and marital status are criteria prohibited in employment decisions, whether used alone or with legitimate reasons, we infer that the legislature meant to treat the use of age *per se* in the same manner.

In *Fred Meyer v. Bureau of Labor,* 39 Or App 253, 592 P2d 564, *rev den* 287 Or 129 (1979), the complainant recovered back pay for discharge "because of race," even though there was some evidence of substandard work performance and the decision to discharge was not proven to be entirely racially motivated. The store manager made the decision to discharge based on unsatisfactory work performance with the recommendation of three supervisors, two of which were found to be motivated by racial prejudice in giving their recommendation. We concluded that there was evidence to support the commissioner's finding that

> " '* * * [a]ny correctly perceived instances of the Complainant's substandard work performance [which influenced the manager's] termination decision were contributed to and caused, *at least in part,* by the racial abuse and slurs directed at the Complainant, * * *.' " 39 Or App at 267. (Emphasis supplied.)

That evidence was sufficient to support a claim for unlawful employment practices under ORS 659.030(1)(a). It was not necessary to prove the absence of any lawful reason for the decision to fire in order to recover.

We conclude that the legislature meant to prohibit the use of age as a determining factor in an employer's decision to hire a particular applicant, even when other factors

are considered. To require Miller to prove that age was petitioner's sole reason for not hiring her would impose an intolerable burden. Employment decisions seldom, if ever, rest solely on any one factor. The critical issue is whether, in petitioner's decision not to hire, age made a difference.

To adopt the position of the dissent would be openly to validate discrimination because of age, provided that one other factor is present. In the 1959 hearings on SB 16, a senator inquired of the chief sponsor and advocate whether the bill would contemplate prohibiting newspaper advertising which restricted age and was told that it would. The dissent would change that answer, if some other factor was mentioned in the ad. This could not be the "positive approach" the legislature intended.

█ Although the commissioner found that petitioner considered three factors[6] in evaluating Miller's qualifications, only one of which was age, there is ample evidence in this case to support the determination that age was a factor in the decision not to hire Miller. The dissent mischaracterizes the facts in this case. Petitioner argues, and the dissent agrees, that she simply hired the older of the two qualified applicants after considering all of the factors, but the commissioner's findings, as well as petitioner's own testimony, show otherwise. Petitioner testified that, when Miller applied for work, she needed and sought two new employes, each to work five days per week, including Saturdays. The only applicants who remained interested after petitioner explained that the clientele were elderly were Miller and Bynum, whom petitioner subsequently hired to work two days per week. She admitted that Miller was qualified and testified in no uncertain terms in her deposition and at the hearing that she considers age in making her hiring decisions. The only explanation that she offered for not hiring Miller was that Miller refused to work full-time or Saturdays. The commissioner was entitled to and did disbelieve that explanation.

█ Miller was not competing with an older applicant for a single position. The evidence supports the view that petitioner did not simply prefer the older applicant, all other factors being equal. The consideration petitioner gave to

---

[6] Because the commissioner failed to indicate what the other two factors were, we cannot say whether that finding was supported by substantial evidence. The finding is not material in the light of the findings and conclusions on the discrimination issue.

Miller's age was not whether she could do a better job than the older applicant, but whether she was too young to do the job at all. By enacting the age discrimination law, the legislature determined that age should not be a factor in a decision not to employ a person, unless age is proven to be a bona fide occupational requirement (BFOR) necessary to the normal operation of the employer's business. ORS 659.030(1)(a). Petitioner claims the BFOR exception on appeal, but there is no evidence in the record to show any correlation between the age of the applicant and the applicant's ability to perform a beautician's job. It may be true that clients averaging between 80 and 95 years of age would prefer the company of a person in mid-life, but there is nothing in this case to suggest that a younger person, otherwise qualified as a beautician, would disrupt the normal operation of petitioner's business. *Compare Civil Serv. Bd of Portland v. Bureau of Labor,* 61 Or App 70, 655 P2d 1080 (1982), *rev allowed* 294 Or 749 (1983).

 The purpose of employment discrimination statutes is to discourage the use of categories in employment decisions which ignore the individual characteristics of particular applicants. By declaring discrimination on the basis of age an unlawful employment practice, the legislature recognized that age alone may bear no relation to a person's ability to perform a job or contribute to society. This is not to deny that age indirectly figures into employment decisions based on experience requirements. Such requirements are valid when they relate to the demonstrated needs of the employer and the actual capabilities of an individual to perform the job. But, when, as here, a qualified applicant is not hired for an available position, no legitimate reason is offered for not hiring that person and age *per se* was a factor in the decision, we hold that the commissioner did not err in concluding that the decision constitutes an unlawful employment practice under ORS 659.030(1)(a).

 In her third assignment, petitioner challenges the commissioner's authority to award $12,143.65 in money damages. The commissioner has the authority to issue an appropriate cease and desist order against any employer found to have engaged in any unlawful practice charged, once she has considered all of the evidence and issued findings of fact and conclusions of law. ORS 659.060(3). A cease and desist order is defined in ORS 659.010(2):

" 'Cease and desist order' means an order signed by the commissioner, taking into account the subject matter of the complaint and the need to supervise compliance with the terms of any specific order issued to eliminate the effects of any unlawful practice found, addressed to a respondent requiring the respondent to:

"(a) Perform an act or series of acts designated therein and reasonably calculated to carry out the purposes of ORS 659.010 to 659.110 and 659.400 to 659.435, eliminate the effects of an unlawful practice found, and protect the rights of the complainant and other persons similarly situated."

An award of money damages constituting the difference between actual earnings and those the complainant would have earned, absent the employer's discriminatory employment decision, has been recognized as within the commissioner's authority to protect the rights of the private complainant under a cease and desist order. *School District No. 1 v. Nilsen,* 271 Or 461, 534 P2d 1135 (1975); *Sch. Dist. No. 1 v. Mission Ins. Co.,* 58 Or App 692, 703, 650 P2d 929 (1982), *rev den* 294 Or 682 (1983); *Clackamas Co. Fire Protection v. Bureau of Labor,* 50 Or App 337, 352, 624 P2d 141, *rev den* 291 Or 9 (1981); *Williams v. Joyce,* 4 Or App 482, 479 P2d 513, *rev den* (1971); *but see Fred Meyer v. Bureau of Labor, supra,* 39 Or App at 270 (Buttler, J., specially concurring). The order to pay money damages is valid if it is reasonably calculated to eliminate the effects of petitioner's refusal to hire Miller because of her age.

The commissioner awarded damages from February 19, 1979, when the applicant who was hired began work, until November 6, 1980, when Miller found "alternative work" at an AM-PM Mini Market. The only fact supporting the conclusion that Miller did not find alternative work until November 6, 1980, was her testimony that, up to that date, she would have quit any job she had to work for petitioner. On the basis of that testimony, the commissioner found that, between February, 1979, and approximately January 1, 1980, and between approximately February 12, 1980, and November 6, 1980, Miller remained ready and willing to work as a beautician in petitioner's salon.[7] We are bound by findings of fact

---

[7] Miller was injured and unable to work from January 1, 1980, until February 12, 1980.

supported by the evidence, but we are not bound by the conclusions drawn from those facts.

After petitioner told Miller that there was no vacancy, complainant resumed looking for work. The first work she obtained was at The Townhouse beauty salon as a beautician for about two days, earning no more than $49. Her percentage commission on that job does not appear in the record. On March 28, 1979, she began working as a beautician full-time at The Airliner beauty salon. After one month at The Airliner, she left voluntarily and immediately started work at Ann's Honeycomb beauty salon. She worked there for approximately eight months, when she left voluntarily. Miller brought none of her own clientele to The Airliner or Ann's, and her compensation was 60 percent of her receipts, as it would have been at petitioner's shop. We accept the commissioner's findings that Miller remained willing to work for petitioner but conclude that she found "alternative work" on March 28, 1979, when she obtained full-time work in the same field at an equivalent commission. Her damages could not continue to accrue beyond that date.

■ In computing the damages, the commissioner found that Miller would have worked full-time, earning at least as much as the average daily wage[8] of petitioner's employes, which was $42.95. Those findings are supported by the evidence. Therefore, Miller is entitled to recover $1,067.70 in damages accruing from February 19 until March 28, 1979,

---

[8] The commissioner found:

"11. For the following reasons, this forum finds that had Complainant worked as a beautician for Respondent fives days per week from February 19, 1979 to December 31, 1979, and from February 12, 1980 to November 6,1980, she would have earned at least as much as the average daily wage Respondent's beauticians received during those periods:

"a. Respondent's salon was very proximate to many barely ambulatory clients and potential clients.

"b. Complainant has been very successful in her beautician work with elderly clients.

"c. Ms. Bynum earned relatively high wages immediately after beginning her employment with Respondent, even though she started out with no clientele of her own.

"d. There is no evidence that the fact that Complainant had less experience as a beautician than Respondent's beauticians had would have affected Complainant's earnings in Respondent's employ."

representing 26 work days at average daily earnings of $42.95, mitigated by the $49 she earned during that period at The Townhouse.

■ In her fourth assignment, petitioner claims that there is no statutory authority for the commissioner to award prehearing interest on lost wages. We do not agree. The commissioner has the authority to order money damages in order to "eliminate the effects of [the] unlawful practice found and protect the rights of the complainant * * *." ORS 659.010(2)(a). Relying on that statute, the commissioner did not err in awarding prejudgment interest representing the loss of the use of the funds as a result of the discrimination.

■ The award does not offend the rule developed in case law that prejudgment interest may be awarded only when the damages are easily ascertainable by simple computation or by reference to generally recognized standards such as market price and the date recovery became due is easily determined. *Public Market Co. v. Portland,* 171 Or 522, 130 P2d 624, 138 P2d 916 (1943); *Carlson v. Blumenstein,* 54 Or App 380, 635 P2d 380 (1981), *modified on other grounds* 293 Or 494, 651 P2d 710 (1982). The date of the rejection sets the time the wages became due, and the sum owing may be ascertained with reasonable certainty by looking at the wages earned by those performing the same job during the period when Miller suffered economic loss on account of the unlawful discrimination.

■ The commissioner, however, ordered that interest be compounded. That method of computation assumes that the entire amount of damages became due on the date of applicant's rejection, which is clearly error. Interest should be at the rate of 6 percent on daily wages accruing between February 19, 1979, and December 31, 1979, and at the rate of 9 percent on wages accruing between December 31, 1979, and March 28, 1979, and 9 percent on the total amount thereafter, until the date petitioner complies with the order.

■■ In her fifth assignment, petitioner contends that the commissioner erred in not disclosing the Bureau of Labor's investigative file. The commissioner contends that she need not disclose the records under ORS 192.500(1)(h), which provides:

"The following public records are exempt from disclosure under ORS 192.410 to 192.500 unless the public interest requires disclosure in the particular instance:

"* * * * *

"(h) Investigatory information relating to any complaint filed under ORS 659.040 or 659.045, until such time as the complaint is resolved under ORS 659.050, or a final administrative determination is made under ORS 659.060."

The public policy favors disclosure of public records and we construe the statutory exemption narrowly, *see Lane County School District v. Parks,* 55 Or App 416, 637 P2d 1383 (1981), *rev den* 293 Or 103 (1982); *Morrison v. School District No. 48,* 53 Or App 148, 152, 631 P2d 784, *rev den* 291 Or 893 (1981). We conclude that the purpose of the exemption is fulfilled by authorizing that disclosure be denied to members of the public exclusive of those involved directly in the dispute. The goal of ORS 659.050 is to promote conciliation of unfair labor disputes. Dissemination of the commissioner's investigative file could reasonably be expected to hinder conciliation by making the controversy public. On the other hand, disclosure of the same information to the accused employer would reasonably reduce the adversary atmosphere and promote amicable resolution of the dispute.

We believe that in a proceeding between the commissioner and an accused employer, the ordinary rules of discovery apply. The commissioner erred in denying discovery under ORS 192.500(1)(h). The commissioner also argues that the materials in her investigative file were not subject to disclosure under the attorney-client privilege of OEC 503. We have reviewed the file and find no information subject to the attorney-client privilege and also, no information helpful to petitioner. The file contains documents that were served on petitioner, in addition to notes of interviews and phone messages consistent with the facts as presented in the proceeding. We conclude that the commissioner had no authority to refuse to disclose the contents of the Bureau's investigative file, but we find that the information, if disclosed, would not have affected the result.

The decisions of the Bureau of Labor and circuit court are modified to reduce damages to $1,067.70, plus interest at the rate of 6 percent from February 19, 1979,

through December 31, 1979, and at the rate of 9 percent on wages accruing between December 31, 1979, and March 28, 1979, and 9 percent on the total amount thereafter, until petitioner complies with the order; affirmed in all other respects.

**ROSSMAN, J.,** dissenting.

Although I highly commend the majority for its well-reasoned resolution of the damages issue in this case, I believe that a proper construction of ORS 659.015 would have obviated the need to reach that issue in the first place. Accordingly, I dissent. ORS 659.015 provides:

> "It is declared to be the public policy of Oregon that available manpower should be utilized to the fullest extent possible. To this end the abilities of an individual, and not any arbitrary standards which discriminate against an individual *solely* because of his age, should be the measure of the individual's fitness and qualification for employment." (Emphasis supplied.)

The majority's construction of ORS 659.015 makes it unlawful to give age any consideration whatsoever in any hiring decision. Reliance by the employer on any number of other legitimate and equally determinative factors is apparently irrelevant. Thus, for example, an employer who turns down an applicant because she has no experience or no education or is seriously addicted to drugs or has a history of committing violent crimes against her employers and because she also happens to be too young or old for the job would be acting unlawfully.

That the legislature intended otherwise is obvious, given its use of the word *solely* in ORS 659.015. *Solely* means "to the exclusion of alternate or competing things," Webster's Third New International Dictionary, which, when read in context, suggests to me that this statute was intended to outlaw arbitrary discrimination based exclusively on age. It was not, as the majority concludes, intended to prohibit employers from considering age along with other proper factors in making a hiring decision.

The erroneous nature of the majority's interpretation becomes even more apparent after considering that the legislature felt it necessary to issue two separate policy statements

regarding employment discrimination. ORS 659.015 is directed at discrimination "against an individual *solely* because of his age." In contrast, ORS 659.020 (*amended by* Or Laws 1983, ch 225, § 2) addresses discrimination "against any of [the state's] inhabitants because of race, religion, color, sex, marital status or national origin." Although the former provision only prohibits discrimination based *solely* on age, the latter provision contains no equivalent limiting language. That omission leads me to conclude that the legislature intended to enact different standards for dealing with age and non-age based employment discrimination.

Moreover, the word *solely* is also conspicuously absent from 29 USC § 623, the federal employment discrimination statute. I question the relevance of federal case law construing a statute that differs in such a material way from our own. The majority's reliance thereon is misplaced.

The commissioner specifically found that petitioner relied on two factors in addition to the applicant's age. Although she does not identify the other two factors, we must assume that they were non-discriminatory. Accordingly, because petitioner did not rely solely on age, in my opinion she did not violate the statute.

The commissioner and the majority conclude that, because petitioner considered age at all, she behaved unlawfully. I do not believe the legislature intended to impose such a narrow and rigid standard. Therefore, I would find that the commissioner relied on an erroneous interpretation of ORS 659.015 in reaching her decision and would remand this case for further action consistent with this opinion. ORS 183.482(8)(a)(B).