Argued and submitted November 7, 1984, affirmed in part, reversed in part and remanded April 30, reconsideration denied May 29, 1985

OGDEN, dba Lucille's Hair Care,
*Respondent on Review/Petitioner on Review,*

*v.*

BUREAU OF LABOR,
*Petitioner on Review/Respondent on Review.*

(26-81; CA A27956; SC S30781, S30919 (Control))

STATE ex rel ROBERTS,
*Respondent on Review,*

*v.*

OGDEN, dba Lucille's Hair Care,
*Petitioner on Review.*

(A8305 02813; CA A29998; SC S30839)
(Cases Consolidated)

699 P2d 189

David Slader, Assistant Attorney General, Salem, argued the cause for Petitioner on Review/Respondent on Review, Bureau of Labor and Industries. With him on the petition were Dave Frohnmayer, Attorney General, William F. Gary, Deputy Attorney General, James Mountain, Jr., Solicitor General, and William F. Nessly, Jr., Assistant Attorney General, Salem.

Charles C. Erwin, Portland, argued the cause and filed the petition for Respondent on Review/Petitioner on Review, Lucille Ogden.

LINDE, J.

**LINDE, J.**

The Commissioner of the Bureau of Labor charged Lucille Ogden, hereafter designated as the employer, with rejecting Rebecca Miller for employment on grounds of her age, in violation of ORS 659.030(1)(a). After a contested case proceeding, the commissioner found that the employer had violated the statute and ordered her to cease and desist from future age discrimination and to pay Miller $16,910.41 in lost wages and prejudgment interest. On the employer's appeal, the Court of Appeals affirmed the commissioner's order except for the amount of money to be paid to Miller, which the court reduced to $1,067.70 plus interest. *Ogden v. Bureau of Labor,* 68 Or App 235, 682 P2d 802 (1984).[1] On petitions by both parties, we allowed review.

The employer asserts that the Court of Appeals erred in misinterpreting the statutory coverage and standard for age discrimination, in awarding prejudgment interest, and in denying her attorney fees on appeal. The commissioner disagrees with the court's ruling on a procedural issue and on the calculation of lost wages.

I

ORS 659.030(1)(a) makes it an unlawful employment practice

"(a)  For an employer, because of an individual's race, religion, color, sex, national origin, marital status or age if the individual is 18 years of age or older and under 70 years of age, * * * to refuse to hire or employ or to bar or discharge from employment such individual. However, discrimination is not an unlawful employment practice if such discrmination results from a bona fide occupational requirement reasonably necessary to the normal operation of the employer's business."

The commissioner found that the employer had declined to employ Miller for an available position in the employer's beauty shop in a retirement home because she thought Miller,

---

[1] The employer also appealed an enforcement order of the Circuit Court for Multnomah County. ORS 659.070 provides that a cease and desist order issued under ORS 659.060 "may be enforced by mandamus or injunction or by a suit in equity to compel specific performance of such order," and that an order awarding "money damages * * * shall constitute a judgment." The appeal was consolidated with judicial review of the commissioner's order, and the judgment was modified accordingly.

who was 30 years old, was too young. The employer appealed the application of the statute on several grounds which are dealt with in the opinion of the Court of Appeals. The only issue of interpretation raised in the petition for review is whether the statute requires the commissioner to determine that age was the "sole factor" in considering applicants whose ages fall in the statutory range of 18 to 70 years. The employer argues for this interpretation of ORS 659.030(1)(a) because the word "solely" appears in ORS 659.015:

> "It is declared to be the public policy of Oregon that available manpower should be utilized to the fullest extent possible. To this end the abilities of an individual, not any arbitrary standards which discriminate against an individual solely because of his age, should be the measure of the individual's fitness and qualification for employment."

In the Court of Appeals, one judge found the argument persuasive. 68 Or App at 251 (Rossman, J., dissenting). The majority reached the opposite conclusion:

> "At first glance, the language in ORS 659.015 may seem to support the dissent's position, but when one considers the context in which the word 'solely' is used and the context in which the policy statement appears, it is apparent that the dissent cannot be correct. The statute proscribes the use of '*any* arbitrary standards which discriminate against an individual solely because of his age.' (Emphasis supplied.) 'Solely because of his age' refers to any employment criterion which makes age a consideration in an employment decision without relating age to ability to perform the job. The evidence in this case supports the conclusion that Miller was not hired because petitioner thought she was 'too young,' even though qualified for the job. 'Too young' is an arbitrary standard which discriminates against Miller solely because of her age. The statute forbids the use of *any* such standard. The commissioner's finding that petitioner relied on three factors, one of which was age, the other two of which are not identified, cannot justify the use of age as a factor in a hiring decision in the face of a clear statutory policy against hiring decisions being made 'because of age.' "

68 Or App at 234.

We agree with the Court of Appeals that the commissioner did not misapply the statute to the facts in this case. It is possible to collect from judicial opinions a variety of statements whether an antidiscrimination law forbids making

the protected characteristic the "sole factor," the "decisive factor," one "determinative factor," or giving it any weight at all unless justified as a "bona fide occupational requirement," as ORS 659.030(1)(a) permits. It is not clear whether these phrases describe sharply different rules of behavior apart from the operational setting of the case under examination. Many of the cases involve discharges, not refusals to hire. A verbal formula used in disapproving an explicit age requirement that simply excludes potential applicants might be phrased differently in an opinion analyzing an employer's explanation why she chose one among several qualified applicants for a single job. It may be phrased differently again at the remedial stage, when the question arises whether "but for" the impermissible weight given to the protected characteristic the complainant would have obtained or kept the desired position. An employer's view of the preferred age for a position might be an impermissible "standard" but may not have caused a specific employee's loss of a position for which he was not qualified in any event. *See, e.g., Rodriguez v. Taylor,* 569 F2d 1231 (3rd Cir 1977).

If the word "solely" in ORS 659.015, on which the employer relies, were given its literal meaning, forbidden age discrimination would occur only if age were the "sole factor" in an employment decision, that is to say, only if the employer's explicit or actual policy were to give preference to an older or a younger employee without regard to any other charateristic, qualification, or performance. The commissioner is not bound to so limited a view of the law. ORS 659.015, in which the word "solely" appears, is an introductory declaration of the "public policy of Oregon" that certain goals "should" be pursued. Such statements of policy goals are not always subjected to the critical and sometimes contentious scrutiny in the legislative process that is lavished on important operative words. ORS 659.015 does not itself define any legal obligation. That occurs in ORS 659.030(1)(a), which makes it unlawful to discriminate against any individual with respect to employment "because of such individual's age." What the commissioner is directed to determine is whether unfavorable treatment occurred "because of" age.

Experience with defining causation in other fields of law suggests that the distinction of quantity or degree

attempted by the verbal formulas may be illusory. Theoretically, if an employer were to assign point scores to two or more factors, such as education, experience, physical strength, performance, recommendations, appearance, personality, friendship, family relationship, or whatever, and weighted age at ten percent, age might be called the "decisive," "a determinative," or "the determinative" factor causing a preference for an employee who scored a lower total on other factors. But the same could be said of the causative force of any other factor that alone accounts for more than the difference in the hypothetical scores. When all other factors are assumed to be equal or favorable, age could be the "sole" reason for an adverse decision. In the ordinary case, however, when an employer does not altogether disqualify applicants or employees from a position by age nor assign quantitative weights to different characteristics, the commissioner nonetheless has the task of determining whether age in fact "caused" the unfavorable treatment.

Here the commissioner found that Miller and another applicant, who was 49 years old, were the only applicants who remained interested in "openings" in the employer's beauty shop after the first interview, but that the employer "had such strong misgivings about Complainant's age that she did not express interest in Complainant's experience or qualifications during her two encounters with Complainant." The commissioner further found that in evaluating the qualifications of the two applicants, the employer "considered three factors, one of which was the age of each of them," and that she hired the older woman but "did not consider hiring Complainant." Finally, the commissioner found that the employer "did not hire or consider hiring Complainant for employment because of Complainant's age.

We understand these findings to mean that the employer did not simply choose the older of two qualified applicants for a single opening. The employer therefore did not, as she claims, risk violating federal prohibitions against "giving preference because of age to an individual 30 years old over another individual who is within the 40-65 [now 40-70] age bracket" of 29 USC § 631.29 CFR § 860.91(a) (1984). Rather, the employer would not consider Miller's other qualifications for an available position because she thought Miller

too young. These findings suffice to support the commissioner's conclusion that the employer committed an unlawful employment practice in violation of ORS 659.030(1)(a).

## II.

The commissioner awarded Miller $12,143.65 for wages lost as a result of the employer's refusal to employ her for reasons of age. This sum was based on what Miller would have earned if she had worked five days a week from February 19, 1979, to December 31, 1979, and from February 12, 1980, to November 6, 1980, at the average wage of the employer's other beauticians, deducting what she earned in other beauty shops where she worked during these periods. The commissioner also awarded interest on this sum at the rate of 6 percent from February 19, 1979 to December 31, 1979, and at the rate of 9 percent thereafter through March 31, 1983, a total of $4,766.76, plus future interest accruing until compliance with the order.

■ ■ The Court of Appeals reduced the commissioner's award of basic pay by eliminating the period after which Miller found full-time employment at another beauty shop. The court wrote:

> "[H]er compensation was 60 percent of her receipts, as it would have been at petitioner's shop. We accept the commissioner's findings that Miller remained willing to work for petitioner but conclude that she found 'alternative work' on March 28, 1979, when she obtained full-time work in the same field at an equivalent commission. Her damages could not continue to accrue beyond that date."

68 Or App at 248. The commissioner contends that the court erred in substituting equivalence of percentage commissions for evidence of actual loss of income. We agree. The court did not specify what scope of review it applied in the quoted passage to "conclude" that Miller found "alternative work" that ended her eligibility for back pay. "Alternative work" is not a statutory term, and there is no reason to think that the court meant to decide a question of law, ORS 183.482(8)(a). An order to pay an amount equivalent to wages lost by an employee as a result of unlawful discrimination is part of a cease and desist order that is "reasonably calculated to carry out the purpose of [the statute], eliminate the effects of an

unlawful practice found, and protect the rights of the complainant and other persons similarly situated." ORS 659.010(2)(a). What the effects of the unlawful practice were in this case and what monetary award was "reasonably calculated to * * * elminate [its] effects" are questions of fact on which the commissioner's finding is final if supported by substantial evidence in the record. ORS 183.482(8)(c). The employer disagreed with the calculation of Miller's lost income but did not address the question in terms of support in the evidence. That part of the commissioner's order must be reinstated.

■      The employer did, however, object to the calculation of prejudgment interest. The Court of Appeals correctly held that prejudgment interest is allowable under ORS 659.010(2)(a) in order to protect the complainant against the effects of the unlawful practice, but that the "computation assumes that the entire amount of damages became due on the date of applicant's rejection, which is clearly error." 68 Or App at 249. For this reason the order must be remanded to the commissioner to recalculate the interest, presumably by determining when Miller would have received her pay had she been hired, or by some other legally defensible formula.

## III.

The procedural issue concerns the employer's efforts to obtain prehearing discovery of Miller's statements to the Bureau of Labor. The treatment of this issue by the Bureau's counsel, the hearing officer, and the commissioner's briefs on appeal shows some confusion and changes of position as to whether exemptions from the Public Records Act, ORS 192.410 to 192.500, do more than permit, rather than require, nondisclosure to members of the general public,[2] and whether any other legal rule entitled the employer to learn the contents of the complainant's statements to the Bureau's personnel. Because we conclude that the issue is not before us for decision, we only summarize the reasons for that conclusion.

The employer took Miller's deposition, but Miller, on advice of the bureau's counsel, refused to disclose what she told the bureau's investigators or its counsel. The employer

---

[2] *See* ORS 192.500(2)(g) and (h) for items that are not only exempt but precluded from disclosure by virtue of other laws.

pursued this demand for disclosure by requesting the presiding officer to order Miller to disclose the content of the conversation and to order that the commissioner disclose the investigative file.[3] She petitioned the Attorney General to order the bureau to disclose the file under the Public Records Act, ORS 192.410 to 192.500, but the Attorney General granted the petition only as to the employer's own statements in the file. At the hearing in this case, the hearing officer ruled that agency counsel's records of "discussions" with Miller were exempt from disclosure as "investigatory information," ORS 192.500 (1)(h).

On appeal, the commissioner relied primarily on the attorney-client privilege stated in the Oregon Evidence Code, OEC 503. While maintaining that the files could not be reached under the Public Records Act, she also argued that the employer could litigate a claim for disclosure under that act only in a separate statutory proceeding in the Marion County Circuit Court under ORS 192.480 and 192.450(2). The Court of Appeals disagreed. As to the exemption of "investigatory information" from disclosure under the Public Records Act, the court concluded that "the purpose of the exemption is fulfilled by authorizing that disclosure be denied to members of the public exclusive of those involved directly in the dispute." 68 Or App at 250. The court expressed the view that "in a proceeding between the commissioner and an accused employer, the ordinary rules of discovery apply," and that the "commissioner erred in denying discovery under ORS 192.500(1)(h)." 68 Or App at 250. Finally, the court wrote:

> "* * * We have reviewed the file and find no information subject to the attorney-client privilege and also, no information helpful to petitioner. The file contains documents that were served on petitioner, in addition to notes of interviews and phone messages consistent with the facts as presented in the proceeding. We conclude that the commissioner had no authority to refuse to disclose the contents of the Bureau's investigative file, but we find that the information, if disclosed, would not have affected the result."

68 Or App at 250.

---

[3] She also sought such an order from the Circuit Court for Multnomah County. The order was denied for lack of jurisdiction.

In petitioning for review of this issue, the commissioner first stated that "ordinary discovery rules" were applicable, but in a supplemental memorandum, the commissioner asserted that "ordinary rules of discovery" do not apply to administrative hearings, that depositions under the Administrative Procedure Act depend on the "materiality" of the desired testimony, ORS 183.425(1), and that the employer "made no attempt to show that the complainant's statements" to the Bureau's personnel "were necessary or helpful to the employer's case."

The commissioner therefore asks us to review what it contends is the erroneous statement of the Court of Appeals quoted above. But we cannot decide that question. The Court of Appeals held that if there was an erroneous ruling in this respect, it was harmless; "the information, if disclosed, would not have affected the result." 68 Or App at 250. The court decided the issue in favor of the commissioner, who is in no position to complain. The employer's petition does not challenge that holding, and we therefore do not further address the court's statement concerning discovery.

IV.

6.     Finally, the employer filed a separate petition for review from the denial of attorney fees in the Court of Appeals pursuant to ORS 183.495 or 183.497. Attorney fees are claimed to be due because the Court of Appeals decision allegedly established that the commissioner's decision lacked any reasonable basis, that her ruling on interest was "clear error," and that her procedural ruling was "without authority," and because the commissioner's monetary award was modified by more than $11,000 dollars. We have reversed the Court of Appeals on the last issue, and the miscalculation of interest is not so egregious as to make it mandatory for the Court of Appeals to award attorney fees.

The decision of the Court of Appeals is affirmed in respect to its conclusion that the employer committed an unlawful employment practice and reversed in respect to the award and the interest calculation. The case is remanded to the commissiner for recalculation of the money order, and to the trial court for modification of its judgment consistent with this opinion and the commissioner's recalculation.