Argued and submitted December 11, 1991, reversed and remanded for resentencing on petition; affirmed on cross-petition July 8, reconsideration denied October 21, petition for review denied December 22, 1992 (315 Or 271)

In the Matter of the Compensation of
Alan G. Herron, Claimant.

## SAIF CORPORATION
and Carlin Construction,
*Petitioners - Cross-Respondents,*

*v.*

Alan G. HERRON,
*Respondent - Cross-Petitioner.*

(WCB 90-13623; CA A69754)

836 P2d 131

David L. Runner, Assistant Attorney General, argued the cause for petitioners - cross-respondents. With him on the briefs were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Donald M. Hooton, Eugene, argued the cause for respondent - cross-petitioner. With him on the brief were Edward J. Harri and Malagon, Moore & Johnson, Eugene.

WARREN, J.

Durham, J., dissenting.

## WARREN, J.

Employer seeks review of a Workers' Compensation Board order holding that claimant's award of scheduled permanent partial disability (PPD) should be paid at the rate of $305 per degree, pursuant to ORS 656.214(2), *as amended by* Or Laws 1990, ch 2, § 7.[1] We reverse.

Claimant suffered a compensable injury in June, 1989. Employer accepted the claim, and it was closed by a determination order in January, 1990, with an award of 8.10 degrees scheduled PPD. By a stipulated order dated June 4, 1990, claimant was awarded an additional 6.75 degrees scheduled PPD. The Board determined that claimant should be paid $305 per degree for that additional award because of the 1990 amendment to ORS 656.214(2), rather than $145 per degree, which was the rate at the time of the injury.

ORS 656.202(2) provides that,

"[e]xcept as otherwise provided by law, *payment of benefits for injuries* or deaths under this chapter *shall be* continued as authorized, and *in the amounts provided for, by the law in force at the time the injury giving rise to the right to compensation occurred.*" (Emphasis supplied.)

In May, 1990, the legislature enacted a revision of the workers' compensation laws, including an amendment to ORS 656.214(2) that increased the rate of compensation for scheduled disabilities to $305 per degree.

Oregon Laws 1990, chapter 2, section 54, provides:

"(1) *Except for amendments to* ORS 656.027, 656.211, *656.214(2)* and 656.790, this 1990 Act becomes operative July 1, 1990, *and notwithstanding ORS 656.202*, this 1990 Act applies to all claims existing or arising on and after July 1, 1990, regardless of date of injury, except as specifically provided in this section.

"(2) Any matter regarding a claim which is in litigation before the Hearings Division, the board, the Court of Appeals or the Supreme Court under this chapter, and regarding

---

[1] Department of Insurance and Finance (DIF) has intervened, pursuant to ORAP 4.40, to defend its rule, OAR 436-35-010(5), which provides that the 1990 amendment to ORS 656.214(2) applies only to injuries sustained after the effective date of the amendment. DIF joined in employer's brief and does not raise any independent arguments. We will not separately discuss DIF's position.

which matter a request for hearing was filed before May 1, 1990, and a hearing was convened before July 1, 1990, shall be determined pursuant to the law in effect before July 1, 1990.

"(3)    Amendments by this 1990 Act to ORS 656.214(5), the amendments to ORS 656.268(4), (5), (6), (7) and (8), ORS 656.283(7), 656.295, 656.319, 656.325, 656.382 and 656.726 shall apply to all claims which become medically stationary after July 1, 1990." (Emphasis supplied.)

Section 55 provides:

"This Act being necessary for the immediate preservation of the public peace, health and safety, an emergency is declared to exist, and this Act takes effect on its passage."

The parties agree that May 7, 1990, is the date when the law was passed. They also agree that the amendments to ORS 656.214(2) became effective on that date. The issue is whether amended ORS 656.214(2) applies to awards made after the effective date of the amendment, regardless of the date of injury, or whether the applicable rate is the one in effect at the time of the injury.

The Board concluded that section 54 is unambiguous:

"Section 54(1) consists of two grammatically independent clauses. The first clause establishes the operative date (when those sections become effective) of four particular amended sections, ORS 656.027, 656.211, 656.214(2) and 656.790. The second independent clause establishes the applicability (to which claims the amendments apply) of the entire 1990 Act. Clearly, the subject matter of the two clauses is entirely different. We find no grammatical or logical reason to conclude that a portion of the first independent provision of Section 54(1), *fixing the operative date of four specific sections*, should modify the clearly stated provision controlling *the applicability of the entire 1990 Act*.

"We can discern no other reasonable reading of Section 54(1) than the one we have stated. It is clear, unambiguous and susceptible on its face to only one reasonable reading." (Footnotes omitted; emphasis in original.)

Notwithstanding its conclusion that the statute is clear on its face, the Board considered the legislative history and found

that it was not "clearly contrary to the section's plain meaning." Thus, it concluded that the amendment to ORS 656.214(2) applies to all awards of scheduled disability made on or after May 7, 1990, regardless of the date of injury.

Employer argues that the Board's analysis is grammatically and logically flawed. It asserts that the initial phrase, "[e]xcept for amendments to ORS * * * 656.214(2)," can just as well modify both of the independent clauses: the effective date clause and the applicability clause. It points out the illogic of the Board's reading, which would have the amendment to ORS 656.214(2) apply to any scheduled disability award made after May 7, but not unless the claim continued to exist on July 1.

█ In construing a legislative enactment, our first task is to discern the legislature's intent. *See* ORS 174.020. If the language is unambiguous, ordinarily we apply it according to its plain meaning, without resort to legislative history. *Satterfield v. Satterfield*, 292 Or 780, 782, 643 P2d 336 (1982). If, however, the legislative purpose is unclear from the language of the enactment, we may consider legislative history as an aid in determining legislative intent. *State v. Leathers*, 271 Or 236, 531 P2d 901 (1975).

█ We agree with employer that, grammatically, subsection (1) can reasonably be read in more than one way. The initial phrase, "[e]xcept for amendments to * * * ORS 656.214(2)," could modify either the entire sentence or only the first clause, which deals with the operative date of the 1990 act. Although it is easier to read it in the way that the Board did, it can also be read as employer asserts.[2] Therefore, we turn to the legislative history to determine what the legislature intended by the language that it used.

The first pertinent discussion of sections 54 and 55 was at the May 4, 1990, meeting of the Interim Special

---

[2] Claimant asserts that the final phrase of subsection (1), "except as specifically provided in this section," somehow clarifies that the legislature intended the opening exception phrase to apply only to the operative date clause. We are not persuaded. The final phrase could be an indication that the *only* exceptions to the applicability clause are the two exceptions that follow that language, contained in subsections (2) and (3). However, it could also be an acknowledgment of the exceptions in subsections (2) and (3) *and* the exception in the initial phrase of subsection (1). The phrase does nothing to clarify the legislature's intent.

Committee on Workers' Compensation. Representative Mannix explained changes from an earlier draft to the draft that was finally enacted:

> "I have been advised that there is some—there isn't a change here—changes that—*except for amendments to* [ORS 656].027, [ORS 656].211, *[ORS 656].214(2),* and [ORS 656].790: *Those provisions are things which the group —Mahonia Hall group wanted to go into effect immediately*—includes the Industrial Advisory Council to go into effect immediately. *They're also using, as an operative date, the standard* that's in .21, excuse me, *that's in [ORS 656].202—the date of injury as the operative date for those provisions.* That—in other words, we're following the standard for that provision and then you jump into, *after that exception, the Act becomes operative July 1 and it applies to all claims existing or arising on or after July 1, regardless of date of injury.* We have the exception for litigation and then we have the exception for, what I'll call claims processing —where medically stationary date is the provision; that is, you've got an open claim, it becomes medically stationary after July first—then those new laws will kick in. * * * And believe it or not that explanation reflects something that is actually simpler than it was in the original bill." Tape Recording, Interim Special Committee on Workers' Compensation, May 4, 1990, Tape 21, Side B at 192-225. (Emphasis supplied.)

The Board discounted that explanation, because Mannix used the term "operative date" when talking about the amendment to ORS 656.214(2). It concluded that he could not have meant to say "applicability date" instead, because both of those terms have precise legislative meanings. It reasoned that it was not authorized to rewrite legislative history and therefore disregarded that statement. Although neither we nor the Board is at liberty to rewrite legislative history, our task is to determine what the legislature intended by its use of certain words. In context, it is apparent that Mannix merely misspoke when he used the term "operative date" in relation to the four provisions in the exception phrase. He said, "That's in [ORS 656].202—the date of injury as the operative date for those provisions." ORS 656.202 has nothing to do with the operative date of anything, but has *only* to do with the applicability of the law to certain claims. Mannix's explanation of section 54, except for

his misuse of the term "operative date," indicates that the drafters intended the section to be read as employer asserts.

Mannix again explained the provisions during the House floor debate:

"Finally, I should mention in terms of the effective dates, we've tried to come up with a three-tiered process here. The law will be effective on passage, but *only four sections are effective immediately and they're subject to the standards of 656.202. Those four sections are 656.027, .211, .214 sub (2), and .790.* Otherwise we have a general clause that says this law will be operative July 1, 1990, with a couple of specific exceptions, one having to do with claims which become medically stationary after July 1, 1990. It allows those claims to then be processed under the new standards. And the other exception is the litigation exception. For once, our legislature has recognized that there are actually tens of thousands of cases in litigation and we're not going to reinvent the wheel on those cases. We will let those cases proceed under the standards in which they were tried, so that you, again, will not be creating more work for lawyers." Tape Recording, House Special Session, Floor Debate, May 7, 1990, Tape 2, Side A at 243-60. (Emphasis supplied.)

The emphasized statement makes clear that the amendments that were to be effective immediately on passage, including the amendment to ORS 656.214(2), are subject to the date of injury rule of ORS 656.202 and that the remainder of the amendments generally will be "operative" July 1. Mannix used the term "operative" in a way that is consistent with the language of section 54 but then said that the operative date is subject to two specific exceptions: subsections (2) and (3). Subsections (2) and (3) relate only to the applicability of the new act to certain claims; they have nothing to do with the operative date of the new act. Thus, although Mannix's language was inaccurate, it is possible for us to glean his meaning.

Finally, during the Senate floor debate, Senator Kitzhaber said:

"The Act becomes operative July first, 1990 for all claims existing or arising on or after that date, regardless of the date of injury, except any claim already being heard in the Hearings Division or before the Board or courts which was filed before May first and had a hearing before July first shall be

determined under the prior or existing law. The new earning capacity definition, the full application of the standards, the new procedures for terminating time loss, rating of impairment, including the medical arbiters, the reconsideration process and the independent medical evaluations shall apply to all claims which become medically stationary after July first of 1990. *Section 55 makes all other sections of the bill, including* the labor-management committee provisions and *the increase in scheduled permanent partial disability, go into effect upon passage of the bill and will apply to injuries which occur after the effective date of this Act."* Tape Recording, Senate Special Session, Floor Debate, May 7, 1990, Tape 3, Side A at 79-92. (Emphasis supplied.)

That statement, too, consistently shows an intent to apply the increase in scheduled disability only to injuries that would occur after the effective date of the act, May 7, 1990. However, the Board also found fault with Kitzhaber's comments, saying that they contradicted statements by Mannix and what it considered the clear language of section 54(1). We have already said that section 54(1) is not clear. Furthermore, we see no contradiction between the legislators' statements. Kitzhaber said that, under section 55, the act was to become effective immediately on passage. Pursuant to section 54, however, only four amendments were to become operative on that date. Those amendments, he explained, were to apply to injuries that occur after the effective date of the act. He explained that the amendments that would become operative on July 1 would apply to all claims existing on that date, regardless of the date of injury rule in ORS 656.202. That reading of sections 54 and 55 is consistent with Mannix's explanations.[3]

Our reading makes all parts of section 54 reasonable and harmonious. *See Cal-Roof Wholesale v. Tax Com.*, 242 Or

---

[3] The Board also noted that

"[s]ome of the sections which are subject to the exception created by the first clause of Section 54(1), ORS 656.211 and 656.790, are purely administrative in nature. They have nothing to do with a particular *claim* and, therefore, ORS 656.202 and the dates of injury of a claim are irrelevant to those sections. In other words, the subject matter of the second clause of Section 54(1) has no bearing on ORS 656.211 and 656.790." (Emphasis in original.)

Even if that were so, it would not mean that the first phrase cannot modify the entire sentence. It merely means that the applicability date clause of the sentence is irrelevant to the two amendments that are unrelated to claims.

435, 443, 410 P2d 233 (1966); *Rivers v. SAIF*, 45 Or App 1105, 1108, 610 P2d 288 (1980). First, all of the provisions that became operative on July 1, 1990, which includes all amendments other than those excepted by the initial phrase of subsection (1), apply to claims existing or arising on and after that same date, July 1, except as provided in subsections 54(2) and (3). The amendments that became operative May 7 are subject to ORS 656.202, which requires application of the law that existed at the time of the compensable injury. Thus, a scheduled disability resulting from an injury that occurred on or after May 7 will be compensated at $305 per degree, but an injury that occurred before May 7 will be compensated at the old, lower rate.

That reading also harmonizes with subsection 54(2). Whether or not "the law in effect before July 1," referred to in that subsection, was intended to include the amendments that became effective May 7, our reading of subsection 54(1) consistently applies the law in effect on the date of injury for cases in litigation and for determining the rate of compensation for all other awards of scheduled disability, whether made before, on or after May 7.

We conclude that the legislature intended the date of injury rule of ORS 656.202 to apply to the amendment to ORS 656.214(2), so that the increased rate of compensation applies only to injuries that occurred on or after May 7, 1990. Claimant is entitled to be paid PPD at the rate in effect as of the date when he was injured, $145.

Because of our disposition of the petition, we need not address claimant's cross-petition.

Reversed and remanded for reconsideration on petition; affirmed on cross-petition.

**DURHAM, J.,** dissenting.

The majority rejects the Board's conclusion that Oregon Laws 1990, chapter 2, section 54, is "clear, unambiguous and susceptible on its face to only one reasonable reading." The majority's conclusion that the statute is ambiguous leads it to explore legislative history, and that history leads it to adopt an interpretation of the statute which, in my view, is contrary to its terms. The majority

orders the Board to direct employer to compensate claimant for his increased scheduled permanent partial disability at $145 per degree, the rate in effect when he was injured in 1989, rather than $305 per degree, the rate in effect in June, 1990, when the additional permanent partial disability was ordered. I respectfully dissent.

The majority mistakes complexity for ambiguity. The statute manifests the legislature's intention with sufficient clarity that a resort to legislative history is not appropriate. *See McKean-Coffman v. Employment Div.*, 312 Or 543, 549, 824 P2d 410 (1992); *Whipple v. Howser*, 291 Or 475, 632 P2d 782 (1981).

Or Laws 1990, ch 2, § 54, provides:

"(1)   *Except for amendments to* ORS 656.027, 656.211, *656.214(2)* and 656.790, this 1990 Act becomes operative July 1, 1990, *and notwithstanding ORS 656.202, this 1990 Act applies to all claims existing or arising on and after July 1, 1990, regardless of date of injury*, except as specifically provided in this section.

"(2)   Any matter regarding a claim which is in litigation before the Hearings Division, the board, the Court of Appeals or the Supreme Court under this chapter, and regarding which matter a request for hearing was filed before May 1, 1990, and a hearing was convened before July 1, 1990, shall be determined pursuant to the law in.effect before July 1, 1990.

"(3)   Amendments by this 1990 Act to ORS 656.214(5), the amendments to ORS 656.268(4), (5), (6), (7) and (8), ORS 656.283(7), 656.295, 656.319, 656.325, 656.382 and 656.726 shall apply to all claims which become medically stationary after July 1, 1990." (Emphasis supplied.)

Section 55 provides:

"This Act being necessary for the immediate preservation of the public peace, health and safety, an emergency is declared to exist, and this Act takes effect on its passage."

Subsection (1) of section 54 is divided into two clauses. The first is the "operative date" clause ("Except for amendments to ORS 656.027, 656.211, 656.214(2) and 656.790, this 1990 Act becomes operative July 1, 1990 * * *."). The second is the "applicability" clause ("and notwithstanding ORS 656.202, this 1990 Act applies to all claims

existing or arising on and after July 1, 1990, regardless of date of injury, except as specifically provided in this section"). The purpose of the operative date clause is to make the 1990 Act operative on July 1, 1990, except for amendments to four specified statutes, including one to ORS 656.214(2) that raised the rate for each degree of scheduled disability from $145 to $305. As a result of the exception of ORS 656.214(2), the rate increase amendment became effective on May 7, 1990, by operation of the emergency clause section 55.

The applicability clause describes the claims to which the 1990 Act applies. It was necessary because, without it, the 1990 Act would be governed by ORS 656.202, which provides that, except as otherwise provided by law, claims are governed by the law in effect on the date of injury. The applicability clause expressly changes that rule with respect to the 1990 Act and declares that the new law

"applies to all *claims existing* or arising *on and after July 1, 1990, regardless of the date of injury*, except as specifically provided in this section." (Emphasis supplied.)

The operative date clause and the applicability clause address different topics, perform distinct functions and cannot be grammatically or logically blended. The majority errs in holding that the operative date clause can be read to modify the entirety of subsection (1). That construction defeats the legislature's separation of the two clauses. As a result, the majority concludes that the increased payment amendment to ORS 656.214(2), which is excepted from the coverage of the operative date clause, is governed by the "date of injury" rule in ORS 656.202(2), because that rule is excepted from the coverage of the applicability clause ("and notwithstanding ORS 656.202"). However, ORS 656.214(2) is not excepted from the coverage of the applicability clause, and that clause applies by its literal terms "to all claims existing * * * on * * * July 1, 1990, *regardless of the date of injury*." (Emphasis supplied.) This claim meets that description.

The majority's blending of the two clauses does not result in a plausible statutory construction. The operative date clause excepts four statutes, not just one, from the coverage of that clause. The other three statutes, ORS 656.027, ORS 656.211 and ORS 656.790, address administrative topics and have nothing to do with an individual claim.

The Board concluded that construing those sections to be subject to ORS 656.202 would be "tantamount to rewriting the legislation," and I agree.

The majority turns to legislative history to discern legislative intent, but the history displays far greater ambiguity than the statute itself.

The majority quotes statements on May 4 and 7, 1990, by Representative Mannix, and a May 7, 1990, statement by Senator Kitzhaber. An examination of each discloses that they are internally inconsistent.

A portion of the May 4, 1990, statement by Mannix is quoted in the majority opinion. The complete statement by Mannix was addressed by the Board in its order. He stated:

"I have been advised that there is some—there isn't a change here—changes that—except for admendments to [ORS 656].027, [ORS 656].211, [ORS 656].214(2), and [ORS 656].790: Those provisions are things which the group- —Mahonia Hall group wanted to go into effect immediately—includes the Industrial Advisory Council to go into effect immediately. They're also using, as an operative date standard that's in .21, excuse me, that's in [ORS 656].202—the date of injury as the operative date for those provisions. That—in other words, we're following the standard for that provision and then you jump into, after that exception, the Act becomes operative July 1 and it applies to all claims existing or arising on or after July 1, regardless of date of injury. We have the exception for litigation and then we have the exception for, and I'll call claims processing- —where medically stationary date is the provision; that is, you've got an open claim, it becomes medically stationary after July first—then those new laws will kick in. * * * And believe it or not that explanation reflects something that is actually simpler than it was in the original bill.

"*You're going to have three factors: effective date immediately, the administrative procedures, as far as the advisory counsel goes, and the provisions in regard to [ORS 656].027, [ORS 656].211, [ORS 656].214 sub (2) and [ORS 656].790. And then, as of July first, it'll apply to all claims*, with one more exception, and that is, if there are some claims that are not yet medically stationary, and those will kick in when they become medically stationary after July first." Minutes, Joint Interim Special Committee (SB 1197). Tape 19A (May 4, 1990). (Emphasis supplied.)

As the Board points out, the first three sentences by Mannix support the Board's construction of section 54(1). In his fourth sentence, Mannix used the term "operative date" twice to suggest that the four statutes excepted from the coverage of the operative date clause are governed by the "date of injury" standard in ORS 656.202. The majority suggests that Mannix "merely misspoke" in using the term "operative date." There is more here than erroneous terminology. Mannix's comment confuses the effect of the operative date clause with that of the applicability clause. The majority finds that Mannix employed his misstatement consistently, but that is inaccurate. His last two sentences contradict the passage relied on by the majority, revert to the construction that he offered in his first three sentences and support the interpretation adopted by the Board. Mannix said that "administrative procedures" and "the provisions with regard to .027, .211, *.214(2)* and .790" (emphasis supplied) would take effect "immediately." That clearly indicates that, according to Mannix, the rate increase amendment in ORS 656.214(2) would take effect "immediately," *i.e.*, on May 7, 1990. His final sentence ("then, as of July 1, it will apply to all claims * * *") confirms that the legislation would apply to all claims and, in the words of the statute under consideration, that meant "all claims *existing* or arising *on and after July 1, 1990, regardless of date of injury*, except as specifically provided in this section." (Emphasis supplied.)

Mannix's May 7, 1990, statement contains similar conflicting signals. His third and fourth sentences are significant:

> "The law will be effect on passage, but only four sections are effective immediately and they're subject to the standards of 656.202. Those four sections are 656.027, .211, .214(2) and .790."

The Board examined the statement and commented:

> "That suggests, as SAIF argues, that another 'applicability date' may have been intended. However, it remains unclear if that is what was meant and, if so, why two of those four sections should be excluded from the operation of a statute (ORS 656.202) which would have no bearing upon their applicability."

I agree. The "date of injury" rule in ORS 656.202 is logically unrelated to the administrative amendments excepted from the operative date clause.

Mannix then said: "We will let those cases proceed under the standards in which [sic] they were tried, so that you, again, will not be creating more work for lawyers." The majority concludes that that indicates that the new rate enacted in ORS 656.214(2) was to be "subject to the date of injury rule of ORS 656.202 and that the remainder of the amendments generally will be 'operative' July 1." 114 Or App at 70. The majority makes an unwarranted leap of faith because the words of the bill that Mannix purported to describe provided that the bill would apply to "all claims existing or arising on or after July 1, 1990, *regardless of date of injury*, except as specifically provided in this section," (emphasis supplied) and that it would apply "notwithstanding ORS 656.202." Mannix's statement that the new act would be subject to the date of injury rule in ORS 656.202 contravenes each of the legislature's two clear signals that the act would apply "notwithstanding 656.202" to claims existing on July 1, 1990, "regardless of date of injury." Those statutory provisions defeat, or at the least conflict with, any suggestion that the 1990 Act was to apply only to injuries occurring on and after May 7, 1990.

The May 7, 1990, statement by Kitzhaber, 114 Or App at 70-71, is similarly ambiguous and inconsistent with the terms of section 54(1). The first sentence recites part of the applicability clause, stressing that the act becomes operative on July 1, 1990, "for all claims existing or arising on or after that date, regardless of the date of injury," subject to stated exceptions. However, his last sentence contradicts that, suggesting that the amendment to ORS 656.214(2) would "go into effect upon passage of the Bill and will apply to injuries which occur after the effective date of this Act." I agree with the Board that the latter statement contradicts his earlier statement, the first quoted statement by Mannix and the unambiguous language of the applicability clause of section 54(1). I cannot understand how the majority derives a clear legislative intention from testimony that is internally inconsistent and contrary to the clear terms of the legislation under consideration.

Finally, the majority suggests that its construction "harmonizes" all of section 54. I disagree. Sections 54(2) and (3) state exceptions to the applicability clause of subsection (1), in correlation with its final clause ("except as specifically provided in this section"). Subsection (2) declares that claim litigation in progress with two procedural characteristics (request for hearing filed before May 1, 1990, and hearing convened before July 1, 1990) "shall be determined pursuant to the *law in effect before July 1, 1990.*" (Emphasis supplied.) The majority disregards the significance of the italicized words, stating:

> "Whether or not 'the law in effect before July 1,' referred to in that subsection, was intended to include the amendments that became effective May 7, our reading of subsection 54(1) consistently applies the law in effect on the date of injury for cases in litigation and for determining the rate of compensation for all other awards of scheduled disability, whether made before, on or after May 7." 114 Or App at 72.

Contrary to the majority's conclusion, the legislature's phrase, "the law in effect before July 1," is not synonymous with "the law in effect on the date of injury." If the legislature had wanted the "date of injury rule" in ORS 656.202 to control in pending litigation, it could have said so by citing that statute, by requiring application of the law in effect "before May 7, 1990," or by words to that effect. It did not do so.

The "law in effect before July 1, 1990," necessarily includes those amendments made effective on May 7, such as the amendment to ORS 656.214(2). That phrase indicates that the legislature intended the greater PPD rate to apply to pending litigation, even though it was not the "law on the date of injury." That is consistent with the purpose of subsection (2) to save the parties the expense and frustration of applying the 1990 amendments, including changes in claim procedures and proof requirements, *see, e.g.,* Or Laws 1990, ch 2, §§ 3, 10, 15, 16, 18, 20, 22 and 40, to certain claims in litigation or on appeal. Applying the new PPD rate to those claims would not change the hearing ground rules or proof requirements or disrupt parties' discovery activities or litigation strategy.

Subsection (3) limits the application of several amendments to "all claims which become medically stationary after July 1, 1990." The amendments alter the procedures or criteria for certain medical determinations. As with subsection (2), the legislature's purpose in altering the applicability date for those amendments was to avoid the unfairness of applying new procedures and criteria to claims for which the underlying injury had become medically stationery on or before July 1, 1990.

Subsections (1), (2) and (3), taken together, manifest a legislative intention to apply the 1990 amendments to existing claims, "notwithstanding ORS 656.202" and "regardless of the date of injury," but not to allow that to disrupt pending litigation. The majority violates that intention by preserving the date of injury rule for awards of scheduled disability for pre-May 7, 1990, injuries to an extent not necessary to protect parties from after-the-fact changes in the standards governing their pending claims. That does not harmonize the subsections and violates the traditional rule that exceptions to statutory requirements are narrowly construed. *Morrison v. School Dist. No. 48*, 53 Or App 148, 152, 631 P2d 784, *rev den* 291 Or 893, 642 P2d 309 (1981). The Board's construction produces consistency between sections 54(1), (2) and (3), and must be preferred for that reason.

We are bound to apply the clear terms of the statute, regardless of competing inferences that may be developed through an exploration of legislative history. The Board correctly held that the amendment to ORS 656.214(2) applied to this claim, because it existed on July 1, 1990. The Board should be affirmed as to the rate of compensation that it ordered.[1]

I dissent.

Buttler, Rossman and Riggs, JJ., join in this dissent.

---

[1] Respondent Herron has cross-petitioned for review of the Board's award of attorney fees. Because I would affirm the Board, on the petition for review, I would address the merits of the cross-petition.