In the Matter of the Compensation of
Travis W. Thorpe, Claimant.

Travis W. THORPE,
*Petitioner,*

*v.*

SEIGE LOGGING
and SAIF Corporation,
*Respondents.*

(WCB 89-25141; CA A70723)

838 P2d 628

Donald M. Hooton, Eugene, argued the cause for petitioner. With him on the brief were Edward J. Harri and Malagon, Moore, Johnson & Jensen, Eugene.

Steven Cotton, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Claimant seeks review of an order of the Workers' Compensation Board denying payment for certain medical services. We affirm.

### The Board adopted the referee's findings:

"Claimant sustained a compensable injury to his head, upper torso, neck, and mid-back in 1978. Several years later, in 1982, SAIF formally denied the compensability of claimant's DMSO treatment. Claimant requested a hearing. In May, 1983, by way of an Opinion and Order, [the referee] set aside SAIF's denial and ordered it to continue to pay for claimant's Dimethylsulfoxide ('DMSO') treatment 'in the future.'

"In August, 1989, the Director [of the Department of Insurance and Finance (DIF)] filed WCD Admin Order 2-1989, with the Secretary of State's office. *It became effective on September 1, 1989.* One of the amendments contained in that order was *former* OAR [436][1]-10-090(24) (*new* OAR [436]-10-090(26)), which stated:

" 'Dimethylsulfoxide (DMSO) is not reimbursable except for treatment of compensable interstital [sic] cystitis.' "

"On December 7, 1989, a SAIF claims examiner wrote a letter to Dr. Jacob, M.D., stating:

" 'Enclosed is a copy of the Oregon Administrative Rules regarding DMSO, OAR 436-10-090(24).

" 'As this is the ruling of the Workers' Compensation Division, we are unable to reimburse you for the DMSO or the injections of such.'

"Thereafter, claimant requested a hearing to appeal a 'denial of [ORS 656].245 benefits * * *.' " (Emphasis supplied.)

The referee set aside SAIF's denial of payment for medical services rendered after September 1, 1989, the effective date of OAR 436-10-090(24). The Board reversed, concluding that claimant was no longer entitled to those services, because the new administrative rule permitted a redetermination of compensability of the medical treatment. The Board said:

---

[1] The Board supplemented the referee's findings by noting that the correct chapter is OAR 436, rather than the OAR 438 reference in the referee's findings.

> "The claim at issue before the earlier Referee was for DMSO treatments rendered on or prior to the 1983 hearing. Treatments rendered after the 1983 hearing represent separate causes of action and are not barred by claim preclusion."

Then the Board held that the denial of compensability was not barred by issue preclusion.[2]

The Board also concluded:

> "[Former] OAR 436-10-003 provided that the provisions of OAR 436-10-090 *et seq*, applied to all services rendered after the effective date of the rules. Inasmuch as *claimant's claim was for DMSO treatment rendered after the September 1, 1989 effective date, OAR 436-10-090(24) is applicable to his claim*." (Emphasis supplied.)

Accordingly, it reversed the referee's award of penalties and attorney fees to claimant.

■    Claimant acknowledges that he does not suffer from interstitial cystitis. He argues, however, that the treatment for the condition from which he does suffer was previously and finally determined to be payable in the 1983 hearing. He contends that because there was no change in his condition, the promulgation of OAR 436-10-090(24) cannot bar his eligibility for the medical services, because his right to receive them was based on the law in effect at the time of his injury in 1978.

Although claimant argues that his eligibility for payment for current DMSO treatments cannot be affected by an administrative rule change, his claim for continuing DMSO treatments has been open since 1983. The Board's order denying payment applies only to treatments rendered after September 1, 1989. It does not affect treatments provided before the effective date of OAR 436-10-090(24). Accordingly,

---

2 The Board said:

"At the time of the earlier Referee's decision, it was claimant's burden to prove that DMSO treatment was reasonable and necessary as a result of his compensable injury under the general provisions of ORS 656.245. At the time of the instant hearing, it was claimant's burden to prove DMSO treatment was reasonable and necessary and for interstitial cystitis under the specific provision of OAR 436-10-090(24). Therefore, the issue in the instant case was not before the earlier Referee. We therefore conclude that SAIF's denial is not barred on the basis of issue preclusion."

we need only decide whether the new rule applies to treatments after September 1, 1989, regardless of the date of claimant's injury.

We agree with the Board's disposition of claimant's arguments relating to claim and issue preclusion. In 1983, the referee decided only the compensability of DMSO treatments given before the 1983 hearing. The expenses here are for treatments administered after September 1, 1989. If the new rule applies to claimant's continuing medical treatments, he had the burden in 1989 of proving that the treatments were reasonable and necessary *and* were for interstitial cystitis. That last issue was not relevant to the determination of the claims in 1983. SAIF's denial is not barred either by claim or by issue preclusion. *See Drews v. EBI Companies*, 310 Or 134, 140, 795 P2d 531 (1990).

The parties agree that, under ORS 656.245(4),[3] the Director of DIF is authorized to "exclude from compensability any medical treatment the director finds to be unscientific, unproven, outmoded or experimental." ORS 656.202(2) provides:

> "Except as otherwise provided by law, payment of benefits for injuries or deaths under ORS 656.001 to 656.794 *shall be continued as authorized*, and in the amounts provided for, *by the law in force at the time the injury giving rise to the right to compensation occurred*." (Emphasis supplied.)

Unless a statute contains language, or there is evidence of legislative intent, to except the statute from the scope of ORS 656.202(2), the law in effect at the time of a claimant's injury will apply. *See SAIF v. Mathews*, 55 Or App 608, 612, 639 P2d 668, *rev den* 292 Or 825 (1982); *see also Johnson v. SAIF*, 78 Or App 143, 714 P2d 1098, *rev den* 301 Or 240 (1986); *compare Buddenburg v. Southcoast Lumber*, 112 Or App 148, 826 P2d 1062, *rev allowed* 314 Or 175 (1992).

Claimant argues that, under ORS 656.202(2), his right to medical services must be determined by the law in effect at the time of his injury. He contends that the rule

---

[3] Subsection (4) was added to ORS 656.245 by Oregon Laws 1987, chapter 884, section 24. ORS 656.245(4) has not been amended since then, although other portions of ORS 656.245 were amended by Or Laws 1991, ch 2, § 10.

excluding DMSO treatments from compensability, authorized by ORS 656.245(4), applies only to new claims filed after September 1, 1989, the effective date of the rule. Because his claim was filed in 1982 and the medical services were authorized in 1983, he argues that the rule does not apply to his claim.

Oregon Laws 1987, chapter 884, section 62(1), provides:

> "*Notwithstanding ORS 656.202*, amendments by this act to *ORS 656.245*, 656.254, 656.262, 656.278, 656.298, 656.388, 656.538, 656.622, 656.794 and sections 17, 18, 28, 29, 30, 31, 33 and 41 of this Act *become operative January 1, 1988*." (Emphasis supplied.)

By including the language "notwithstanding ORS 656.202," the legislature specifically indicated that it intended that ORS 656.245(4) — and, consequently, rules promulgated under its authority — would apply to all claims in existence *on the operative date of the rules*, without regard to the law that was applicable at the time of injury.

■ We recognize the harsh consequences of so applying the legislation, but we are required to interpret statutes as the legislature writes them. Section 62(a) must be read to describe both the operative date of the specified amendments and the applicability of those amendments to particular claims. *See SAIF v. Herron*, 114 Or App 64, 69-70, 836 P2d 131 (1992). Any other reading would render the first clause of section 62(1) meaningless.

Furthermore, as the Board correctly found, OAR 436-10-003 provided that the provisions of OAR 436-10-090 *et seq* apply to all medical services rendered after the September 1, 1989, effective date of the rules. By enacting ORS 656.245(4), the legislature specifically authorized the Director to promulgate the administrative rule excluding certain medical treatments determined to be "unscientific, unproven, outmoded or experimental." In turn, by promulgating OAR 436-10-090(24), the Director specifically required the Board to limit the compensability of DMSO services, as it did. Unless the rule is invalid, the Board properly followed the rule by denying claimant's claim.

Claimant challenges the validity of OAR 436-10-090(24) on the basis that it conflicts with his "right to lifetime medical benefits." This argument is basically a variation of his contention that the rule conflicts with the statutory requirement of ORS 656.202 that the law at the time of the injury applies. As we have concluded, claimant is incorrect. The Board correctly determined that OAR 436-10-090(24) applies to exclude from compensability DMSO treatments received by claimant after September 1, 1989.

Affirmed.