591

Argued and submitted July 22, 1992; resubmitted In Banc July 14, affirmed August 25, 1993

In the Matter of the Compensation of
Ervin E. Young, Claimant.

BOEING COMPANY
and Aetna Casualty & Surety Company,
*Petitioners,*

*v.*

Ervin E. YOUNG,
*Respondent.*

(89-25185; CA A72213)

858 P2d 484

Darren L. Otto, Portland, argued the cause for petitioners. With him on the brief was Scheminske & Lyons, Portland.

Geoffrey G. Wren, Portland, argued the cause for respondent. With him on the brief was Royce, Swanson & Thomas, Portland.

DURHAM, J.

## DURHAM, J.

Employer seeks review of an order of the Workers' Compensation Board setting aside employer's denial and back-up denial of claimant's claims arising from his exposure to toxic fumes at work.

In August, 1989, an incident occurred at the plant where claimant worked involving a compound used to seal the inside of gearboxes: A mixture of a styrene monomer and a polymerizing catalyst, dicumyl peroxide, overflowed while being heated in an oven. Claimant said that he smelled an "extremely foul odor, no sweetness" when he walked through the area adjacent to the spill and that he immediately became ill. He did not feel any better as time passed and developed a severe headache and nausea. He was taken to the plant's nurse, and complained of a numb, tingling right hand, a tingling left ear, sudden flashes of light on the left side of his head, difficulty in speaking, loss of motor coordination, acute anxiety, trouble in concentrating, loss of feeling in his lower lip, a visual field that "moved in and out," and shortness of breath. Claimant was admitted to the intensive care unit of a nearby hospital for observation. The initial diagnosis was a central nervous system disorder resulting from vinyl benzene exposure. In September, 1989, employer accepted his claim for a physical disorder identified as a central nervous system depression.

Claimant continued to have physical symptoms similar to those that he experienced immediately after the exposure to the toxic fumes. However, the doctors who examined him were unable to find a physical disorder. Claimant was referred to Dr. Colbach, a psychiatrist, for an evaluation. Colbach determined that claimant was suffering from a conversion disorder. Colbach referred claimant to Dr. Reiter for a neuropsychological examination. Reiter believed that claimant was consciously producing many of his physical symptoms. Claimant sought benefits for a conversion disorder. Employer denied that claim on November 14, 1989.

Claimant was released for work without restrictions. He returned to work, but his symptoms recurred shortly thereafter. He was sent to the emergency room at a nearby hospital, where he was examined by Dr. Karsten. Karsten

concluded that claimant was "malingering." Dr. Turco examined claimant and agreed with Colbach that claimant suffered from a conversion disorder. However, Turco eventually withdrew his initial diagnosis and concluded that claimant was a malingerer after reviewing Karsten's report and the report of Dr. Zivin, a neurologist who also believed that claimant was consciously producing his symptoms. On November 2, 1990, employer issued a "back-up" denial of claimant's claim for a central nervous system depression. The Board set aside both employer's denial of the claim for a conversion disorder and its back-up denial of the claim for central nervous system depression.

Employer first assigns error to the Board's order setting aside the back-up denial of the claim for central nervous system depression. As a threshold matter, claimant argues that the applicable statute is the former version of ORS 656.262(6), which allowed an employer to issue a back-up denial only if it could prove fraud, misrepresentation or other illegal activity on the part of claimant. *See Bauman v. SAIF*, 295 Or 788, 794, 670 P2d 1027 (1983). The 1990 special session added new language to ORS 656.262(6) providing that an employer may also deny an accepted claim if, within two years of the date of acceptance, it can prove by clear and convincing evidence that the claim is not compensable. Claimant argues that the former version applies, because he requested a hearing on the initial denial of his conversion disorder claim before May 1, 1990, and that that hearing was originally convened before July 1, 1990, even though it was reconvened on November 6, 1990. *Astoria Plywood v. Culp*, 115 Or App 737, 743, 840 P2d 99 (1992); *SAIF v. Herron*, 114 Or App 64, 836 P2d 131, *rev den* 315 Or 271 (1992). Claimant argues that the propriety of the "back-up" denial was made a part of the reconvened hearing under a single Workers' Compensation Board case number and, therefore, the timing of the hearing on the conversion disorder claim determines the applicable law for the back-up denial as well.

■    We agree with claimant that, if the back-up denial had been at issue in the earlier hearing, the fact that the hearing was reconvened *after* July 1, 1990, would not affect the applicability of the earlier version of ORS 656.262(6). *See*

*Astoria Plywood v. Culp, supra.* However, the back-up denial in this case was issued on November 2, 1990, and claimant could not have requested a hearing on that matter before May 1, 1990, nor could a hearing on it have been held before July 1, 1990. Accordingly, we agree with the Board's determination that ORS 656.262(6) as amended applies to the back-up denial.

■ Applying the amended version of ORS 656.262(6), we hold that the Board's findings relating to what happened to claimant at work are supported by substantial evidence and that those findings support its conclusion that employer failed to prove by clear and convincing evidence that claimant experienced no compensable physical injury as a result of his exposure at work to styrene fumes. There was evidence that toxic fumes were released at claimant's work site and that other employees suffered minor reactions. Further, the doctors involved in claimant's emergency care stated that claimant suffered an acute physical reaction to exposure to styrene fumes. Dr. Smith, the emergency room physician, diagnosed central nervous system depression. Dr. Custis, an internal medicine specialist, initially concurred with that diagnosis. Claimant's physical symptoms, as chronicled by the emergency care personnel, were consistent with that diagnosis.

■ We also hold that the Board's conclusion that employer failed to prove that claimant engaged in fraud, misrepresentation, or other illegal activity is correct. Employer argues that the evidence establishes that claimant is a "malingerer" and that he consciously produced his continuing physical symptoms. There is evidence that would support that conclusion. However, as discussed above, there also is evidence that claimant's immediate physical reaction to his exposure to styrene fumes was not faked. In view of that evidence, we cannot say, as a matter of law, that employer's initial acceptance was obtained by fraud, misrepresentation or illegality. The Board properly set aside employer's back-up denial of claimant's claim for a central nervous system depression.

■ Employer next argues that the Board erred in setting aside its denial of the claim for conversion disorder. Employer argues that the Board erred in using the *material* contributing cause standard for an industrial injury, ORS

656.005(7)(a), *(since amended by* Or Laws 1990, ch 2, § 3), rather than the *major* contributing cause standard of an occupational disease. ORS 656.802(2).[1] It contends that the 1987 legislative changes to ORS 656.802 provide that a claim for a mental disorder may only be brought under the occupational disease law.

We have held that not all claims for a mental disorder must be brought as occupational disease claims under ORS 656.802. *Aetna Casualty Co. v. Robinson*, 115 Or App 154, 156, 836 P2d 1362 (1992); *Boeing Co. v. Viltrakis*, 112 Or App 396, 398, 829 P2d 738 (1992). As we explained in *Viltrakis*, if a claim for a medical disorder is brought as an independent claim, it must be brought under ORS 656.802 as a claim for an occupational disease. However, if the condition results from a compensable injury, it may be treated as a claim for the consequences of an injury.

> "[W]hen a claimant merely seeks to recover benefits for the consequences of a compensable injury, but does not seek to establish independently the compensability of a mental disorder, the provisions of ORS 656.802 do not apply." 112 Or App at 399.

A mental disorder is compensable as a consequence of a work-related accidental injury if the injury materially caused the mental disorder. *Nordstrom, Inc. v. Gaul*, 108 Or App 237, 240, 815 P2d 710 (1991).[2]

Claimant has at all times contended that he suffered a compensable injury from a sudden toxic fume exposure and, as a consequence of that accident, developed a conversion disorder. Although employer sought to characterize the conversion disorder claim as one for an occupational disease, the Board rejected that approach. We have previously affirmed the Board's rejection of an employer's effort to recharacterize a consequential psychological condition claim as one for an

---

[1] The parties agree that the 1990 amendments do not apply to claimant's claim for a conversion disorder, because he requested a hearing before May 1, 1990, and a hearing was convened before July 1, 1990.

[2] ORS 656.005(7) has since been amended to provide that

"[n]o injury or disease is compensable as a consequence of a compensable injury unless the compensable injury is the major contributing cause of the consequential condition." Or Laws 1990, ch 2, § 3.

That amendment does not govern this proceeding.

occupational disease. *American Nursing v. Yost*, 108 Or App 243, 245, 815 P2d 708 (1991). We do so again in this case. The Board adopted the referee's extensive findings that "claimant suffered a real physical event caused by exposure to styrene which required medical care and treatment," that he "began having some physical symptoms from that exposure, [and that] he developed a powerful psychological reaction." Substantial evidence supports these findings.

Affirmed.